LEE, *Appellant*, v. SMITH, *Assignee.*

1. **Practice**: CHANGE OF VENUE. An application for a change of venue, for the reason that the opposite party has an undue influence over the inhabitants of the county, made after the parties have waived a jury trial, is properly overruled.

2. **Cashier, Certificates of Deposit Issued to Himself.** A cashier of a bank, even when he possesses the general authority to certify to checks, cannot by reason thereof, certify checks or issue certificates of deposit, to himself.

3. ————: NOTICE. Certificates of deposit so issued by a cashier are void on their faces, and one accepting them cannot claim that he is a *bona fide* holder, without notice of the cashier's want of authority to bind the bank in issuing them.

*Appeal from Jackson Circuit Court.* — HON. F. M. BLACK, Judge.

AFFIRMED.

*Draffen & Williams* for appellant.

(1) The court committed error in overruling appel-

lant's application for a change of venue. R. S. 1879, sec.
3729. (2) The bank ought to be held liable. The bank,
under the circumstances, ought to be estopped to deny
the certificate of its cashier. Bigelow on Estoppel, p.
451, et seq. ; Western, etc., R. R. v. Franklin Bk., 1
Am. and Eng. Corp. cases, p. 46. The appellant gave up
and cancelled the note of Alther & Co., in reliance upon
the certificates, and was not in the same position as be-
fore the transaction. McBride v. Durham, 6 Law Reg.
736. (3) Appellant was a bona fide holder for value, and
before maturity of the certificates. Barret v. Schuyler
Co., 44 Mo. 197 ; German Bk. v. International Bk., 71
Mo. 183. (4) The bank should be held responsible rather
than an innocent party who relied upon the acts of its
cashier as the agent of the bank, and gave up his securi-
ties on the faith of the same. Cook v. Bank, 52 N. Y.
96 ; Irving Bk. v. Weatherford, 36 N. Y. 335.

*W. H. Watts* and *Henry Smith* for respondent.

(1) The certificates, on their faces, were legally in-
valid, and being, in fact, false, are void. Morse on Banks
(2nd Ed.) pp. 206, 207, 196, and 197 ; Claflin v. Bk., 25
N. Y. 293. (2) On their faces the certificates are non-
negotiable, and are, in fact, without consideration to the
bank. Bailey v. Smock, 61 Mo. 213 ; Morse on Banks,
p. 64. (3) Their issuance was ultra vires on the part of
the bank, and without authority on the part of Alther,
as there was no actual deposit. Daviess Co., etc., v.
Sailor, 63 Mo. 24 ; Fletcher v. Bk., 8 Wheat. 360 ;
Story's Agency, secs. 114–115. (4) There is no estoppel
against the bank. The principal is never estopped from
inquiring into the extent of his agent's authority, and "no
act of an agent will estop his principal unless the matter
comes within the scope of his agency." Fouque v. Bur-
gess, 71 Mo. 389 ; Wheeler v. Givan, 65 Mo. 89 ; Tate
v. Evans, 7 Mo. 419 ; Tucker v. R. R., 54 Mo. 177 ;
First National Bank v. Gray, 63 Mo. 33 ; Daviess Co. S.

*Ass'n v. Sailor*, 63 Mo. 24. Lee has lost nothing by reason of the transaction. R. J. Alther is individually liable on the certificates or original notes, so that the doctrine of estoppel does not apply to this case. *State v. Lories*, 52 Mo. 396; *Driskel v. Mateer*, 31 Mo. 325; *Bales v. Perry*, 51 Mo. 449, and 453; *Austin v. Loring*, 63 Mo. 19 and 22.

MARTIN, C.—This is a proceeding on appeal from the action of an assignee in refusing to allow four certificates of deposit as just demands in favor of plaintiff against the bank assets held by defendant, as assignee. After the appeal was entered in the circuit court, the parties appeared by their respective attorneys and waived a trial by jury. After the case had been pending in the circuit court a long time, the plaintiff, on the fifteenth day of December, 1883, made an application for a change of venue, alleging as ground therefor "that the opposite party had an undue influence over the inhabitants of the county." I think this application was properly overruled by the court. Under the first clause of section 3729, Revised Statutes, 1879, a change of venue is allowed when the judge is prejudiced; under the second, when the opposite party has an undue influence over the mind of the judge; under the third, when the inhabitants are prejudiced; under the fourth, when the opposite party has an undue influence over the inhabitants of the county. The plaintiff's application fell under the fourth clause and implied that a fair jury could not be obtained to try his case, on account of the defendant's influence over the inhabitants of the county. After having waived a jury trial and accepted the judge as trier of the facts, nothing was left for this application to operate upon. His waiver of record constituted an estoppel against any application under that clause. There is no connection between the facts stated and a fair trial which had to be by the judge. The application was, also, defective in failing to state that the applicant had just cause to believe that he could

not have a fair trial on account of the causes alleged. R. S. 1879, sec. 3732.

The certificates of deposit, which the court refused to allow in the trial anew before it, are four in number, for $1,000 each, and resemble in all respects, except as to the time when payable, the following one of the number:

"MISSOURI VALLEY BANK,

"Kansas City, Mo., Nov. 31, 1880.

"No. 1977.

"R. J. Alther has deposited in this bank one thousand dollars, payable to the order of himself, four months, on the return of this certificate, properly endorsed, without interest.

"ROBERT J. ALTHER,

"Cashier Missouri Valley Bank."

Indorsed as follows:

"Pay John Lee, or order.

"ROBT. J. ALTHER."

It had been returned to Mr. Lee, after an indorsement by him, for collection. It is necessary to allude briefly to the transactions out of which these certificates arose. Mr. Robert J. Alther had been a member of the firm of R. J. Alther & Co., of St. Louis. While in said firm he became indebted to C. F. Aehle, of Boonville, who was a member of the banking firm under the name and style of Aehle, Dunnica & Co., which was succeeded by Aehle, Lee & Dunnica, of which the plaintiff was a member. This indebtedness was for money advanced and obligations incurred and discharged by Mr. Aehle to the use of R. J. Alther & Co. Upon request of Mr. Aehle, Mr. Alther, in December, 1876, forwarded to him the firm note of R. J. Alther & Co., in the sum of $6,000, payable one day after date. Upon dissolution of the firm of Aehle, Lee & Dunnica, this note turned up as a part of the assets thereof, and as such it came into the hands of Mr. Lee, who attended to the settlement of its affairs, and was looking around for the capital he had put into the concern. In the meantime, Mr. Alther

withdrew from the firm of R. J. Alther & Co., after discovering that its liabilities were getting the advantage of its assets, and settled in Kansas City, becoming soon thereafter cashier of the Missouri Valley Bank.   Rightfully assuming that such positions of responsibility are not usually bestowed upon insolvent or impecunious persons, Mr. Lee dispatched his attorney thither for the purpose of collecting his note.   Mr. Alther was given to understand that he would have to settle the note or it would be enforced against him by suit.   Thereupon Mr. Alther, protesting against the validity and consideration of the note, finally thought it prudent to settle for it. He says he was induced to do this on account of the position he held, and out of fear of a run on the bank, which a suit against him might inaugurate.   In settlement of the note at its face value he paid to Mr. Lee's attorney $1,000 in currency, and delivered to him five certificates of deposit on the bank for $1,000 each, payable in three, four, five, six, and seven moths from date. The first one he said he paid when it was presented to him as cashier, through the clearing house.   The other four are asserted for allowance against the bank in this case.   Upon receiving the certificates the note was delivered up to Mr. Alther.

Now, at the time of issuing the certificates of the bank in settlement of his private debts, Mr. Alther had no funds on deposit in the bank ; in fact, his account in the bank was overdrawn.   The certificates were not filled out in regular order from the blank certificate book, but were taken from the back part thereof.   No memorandum of amounts or persons was left on the stubs remaining in the book to indicate for what, or to whom, the certificates were issued.   Mr. Alther had no special authority for issuing them outside of his authority as cashier.   Neither was the fact of their issue known to any of the other officers or employes of the bank.   The attitude which the plaintiff occupies towards the certificates, as indicated in the argument of his counsel, is that

he accepted them as transferred to him by Mr. Alther, in absolute payment of the note of R. J. Alther & Co., which was surrendered to Mr. Alther, without any knowledge of the condition of accounts between Mr. Alther and the bank, but believing that the funds were on deposit as represented in the certificates and as orally stated by Mr. Alther. Having been issued by the proper officer, he contends that they should be binding upon the bank. He, also, contends that the cashier had special implied authority to issue them, resulting from certain facts appearing in evidence to the effect that the bank had no by-laws or rules, that the president was generally absent, and that the directors gave no personal attention to its affairs, but knowingly permitted Mr. Alther to do about what he pleased with the funds of the institution. This position cannot be successfully maintained.

It is unnecessary to consider whether the cashier of a bank has authority, as such, to certify the existence of funds in the absence of actual deposits, for no such general authority, if possessed by him, would justify him in certifying his own check, or in issuing, as he did in this case, a certificate of deposit to himself. He could not do this without representing both sides to the transaction, thus perfecting a contract through only one consenting mind, a thing positively forbidden to agents and trustees in every department of agency and trust. The law will not permit an agent's private interest to come between himself and his principal. Its actual presence always disables the agent from binding his principal in the transaction. *Claflin v. Farmers & Citizens' Bank*, 25 N. Y. 293; *Mercantile Mutual Ins. Co. v. Hope Ins. Co.*, 8 Mo. App. 408; *West St. Louis Sav. Bank v. Shawnee Co. Bank*, 95 U. S. 557. Accordingly, when Mr. Alther, as cashier of the bank, certified that Mr. Alther had deposited the money called for in these certificates, and that the bank would pay to his order the amounts so deposited, upon return of the certificates, he undertook to bind his principal in a method forbidden by law. There-

fore, these certificates were presumptively void upon their face, a fact which must have been apparent to Mr. Lee, or any one else, inspecting them. The plaintiff, on accepting them, could not maintain that he was a *bona fide* holder without notice of the cashier's want of authority to bind the bank in issuing them. No implied authority in the cashier could arise from the general course of business in the bank. Nothing short of a subsequent confirmation of them by officers properly representing the bank could give to them any force or validity whatever.

As the evidence fails to disclose any such confirmation, the decision of the court denying allowance of them as lawful demands against the assets of the bank should be affirmed, and it is so ordered.   All concur.

