## KITCHENS et al., Respondents, v. TEASDALE COMMISSION COMPANY, Appellant.

### St. Louis Court of Appeals, March 15, 1904.

1. **BANKS: Misappropriation by Cashier: Notice.** The cashier of a bank drew, over his official signature, drafts upon the bank's correspondents in distant cities, and transmitted them to the defendant, a commission company, which collected them and used the proceeds, under the instructions of the cashier, on his individual account, in grain speculations, whereby the money was lost and the receivers of the bank, after its failure, sued the defendant for the proceeds of drafts. *Held,* the manner in which the money was transmitted was notice to the defendant that the cashier was using the funds of the bank on his individual account. *Held,* further, though the directors of the bank were guilty of gross neglect in their careless supervision of the business, and permitted the cashier to have exclusive management of its affairs, this constituted no defense. *Held* further, that the defendant, commission company, having notice of the misappropriation of the funds by the cashier, was liable for the amount thus misappropriated.

2. ———: ———: **Evidence: General Denial.** The answer of the defendant being a general denial, with no offer to amend, evidence of a secured note given by the cashier and accepted by the directors of the bank in settlement of the claim, was properly excluded.

3. ———: ———: ———. Expert testimony to the effect that it was a general custom for cashiers of banks to draw drafts upon their own banks in payment of their own indebtedness, was not admissible.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

AFFIRMED.

*R. F. Walker* for appellant.

(1) Appellant should have been permitted to introduce evidence to show that the board of directors were negligent in their duty in permitting the cashier, W. H. Ritter, to have the entire care and management of the bank. If directors permit a cashier to pursue a line of conduct for a considerable period of time the bank will be bound by his acts. The cashier's authority may be implied from the conduct or acquiescence of the corporation, as represented by its board of directors. Martin v. Webb, 110 U. S. 7; s. c., 28 Law Ed. 49. (2) The appellant should have been permitted to show that W. H. Ritter, the cashier, subsequent to the drawing of the last draft in question, gave his note for five hundred dollars secured by collateral worth more than the note, to the bank, and that the same was accepted by the board of directors. While it is generally true in an action to recover money the defense of payment is not admissible under a general denial, yet where the fact of nonpayment is stated in the petition, as was done in this case, as a material averment of plaintiff's cause of action a general denial will suffice to authorize defendant to show a payment or settlement. State ex rel. v. Peterson, 142 Mo. 526; Wheeler v. Tinsley, 75 Mo. 458; Knapp v. Roche, 94 N. Y. 333.

*F. H. Sullivan* for respondents.

(1) The form of these drafts, remitted on personal transactions of the cashier, was notice to appellant that he was using the funds of the bank for his own purposes, and appellant was properly held liable to refund the

amounts. Lee v. Smith, 84 Mo. 305; Anderson v. Kissan, 35 Fed. 699; Lawson v. Beard, 94 Id. 30; Mendel v. Boyd, 91 N. W. (Neb.) 860; Campbell v. Bank, 67 N. J. Law 301; Express Co. v. Hough, 3 Ohio *nisi prius*, 301; Bolles Bank Officers (Ed. 1890), p. 276, sec. 559; p. 277, sec. 560. (2) (a) Negligence of directors no defense. (b) And if it was, it could only be available as an estoppel by showing that appellant's conduct was influenced thereby. Estoppel was not pleaded, and hence was not available as a defense. Sanders v. Chartrand, 158 Mo. 352. (c) The drafts were recorded on the books of the bank as having been issued to others than appellant, and the bank's officers could not be charged with negligence for failing to ascertain the true state of facts. (3) No subsequent settlement of the matter of these drafts was pleaded, and hence no such could have been shown. Greenway v. James, 34 Mo. 328; Hardwick v. Cox, 50 Mo. App. 513; Mfg. Co. v. Cunningham, 73 Mo. App. 380; Jones v. Rush, 156 Mo. 371. (4) A custom to affect right must be certain, reasonable and uniform in the particular locality and not contrary to law. Ober v. Carson, 62 Mo. 214; Cotton Co. v. Stanard, 44 Mo. 83; 27 Ency. Law (1 Ed.), p. 782.

STATEMENT.

This action was by the respondents, as receivers of the Greene County Bank, upon five drafts substantially in the form following:

"Greene County Bank.

"Paragould, Arkansas, Dec. 8, 1899.

"Pay to the order of J. H. Teasdale Commission Company three hundred dollars.

"To Western National Bank,

"New York City.

"W. H. Ritter,

"No. 6160. Cashier."

Vol 105 app— 30

The petition was subdivided into five counts with modifications appropriate for varying dates of December, 1899, and January, 1900, amounts and drawee; two of the drafts being upon the Western National Bank, New York, and the remaining three upon the Merchants Laclede National Bank, St. Louis, and all were remitted to appellant by their maker and drawer, W. H. Ritter, cashier, and collected and placed to his individual account with appellant, in speculative personal operations in grain conducted by him through the commission company. The proceeds of these remittances were absorbed and lost in these ventures, saving a trifling balance repaid Ritter. The drafts were drawn and executed by Ritter and entered in a book of account with the bank, in which he was required to record exchange drawn; the bank had never conferred any authority upon Ritter to employ its funds for his own purposes, and subsequent to its suspension it was discovered that these drafts were drawn in favor of appellant in lieu of the payees, in whose names they were entered in the exchange ledger. Ritter was cashier at dates of the drafts and had occupied such official position for several years preceding. The book of account containing the personal account of Ritter displayed, that from the first day of December, 1899, to the same date in February, 1900, his account had been overdrawn and the largest amount to his credit at any one time had been but little in excess of one hundred dollars, which had been applied shortly after its receipt upon a transaction other than those here involved, and none of these drafts appeared charged against his account. It was apparent from the testimony that to the cashier was confided the general charge and management of the bank, the directory meeting irregularly and infrequently. It was further manifested in evidence that the dealings of appellant with the insolvent bank were confined to the re-

ceipts of the drafts in question, except that it had forwarded the bank collections and received remittances therefrom in form of similar drafts. The officer of defendant handling the transactions with Ritter, also stated that appellant was aware in receiving these drafts that the bank was drawing against its deposit in other banks in favor of appellant, in personal transactions of its cashier in purchases of wheat and, dates and amounts accepted, the drafts received on the personal account of Ritter were the same in form as those remitted by the bank in payment of collections made by it for appellant's account, and he looked no further than to observe that the drafts sent by Ritter on his personal account were made out in the proper form. The court refused instructions at instance of defendant, to the effect that in dealing with Ritter in good faith, appellant was not required to look beyond the face of the drafts to determine whether he was authorized to draw and transmit them in payment of his personal obligations; also that if it was shown by the evidence that the directors entrusted the entire care and management of the business of the bank to the cashier, and it was his custom to draw drafts on the bank in payment of his personal obligations, then the directors would be presumed to have had knowledge of such custom and assented thereto, and defendant was not required to look further than the face of the drafts to determine the cashier's right to issue them; also that if the whole business of the bank was delegated to its cashier and the directors acquiesced in such exclusive management, and defendant dealt in good faith with Ritter, defendant was not required to make further inquiry as to the right of Ritter to draw drafts upon the bank in his own name in his own transactions, than that disclosed by the face of such drafts, and finally an instruction was refused based upon an adjustment with the board of directors by delivery and acceptance of a secured note of Ritter, and the court directed the

jury to find a verdict for plaintiffs for the respective amounts of the several drafts with interest accrued.

REYBURN, J. (after stating the facts as above). —1. Appellant contends that it should have been permitted to introduce testimony to prove that the directors ignored their duties, and for a considerable period permitted the cashier to have entire management and conduct of the institution, and thereby the bank became bound by his actions. Although the members of the directory of the bank may have been guilty of culpable negligence or gross neglect by their careless supervision of the business, and disregard of their official duties, and permitted Ritter to have exclusive management of its affairs, which might have rendered them responsible to creditors or stockholders for the losses ensuing, yet their wrongful actions and neglect of duty constitute no defense to this action available in behalf of defendant. This proceeding is for the recovery of funds, confessedly known by appellant's officer, to have been the corporate property being then applied by its cashier to his personal speculations by draft upon its correspondents over his official title. By the medium adopted for the transfer of the money, defendant was apprised that Ritter by the abuse of his power as cashier was employing the funds of his principal in speculation on his individual account and in affairs which from their nature excluded the possibility of being concerns of the bank. That he was transcending the well known extent of his agency and using the money of his principal in his private transactions was manifest: in the unconcealed application of the funds known to be the bank's property to Ritter's individual affairs, there is no room for maintaining that the transactions were other than his own affairs not as cashier, but personally and individually. Appellant knew it was dealing with Ritter personally, and also knew the funds of the bank were used by him

for his own ends and that the funds were in course of deliberate misappropriation by betrayal of Ritter's trust. It is true that the transmission of cash, by means of draft of remitting bank through its cashier, drawn upon its depository correspondents at distant cities has been adopted so universally in the commercial world, that such instruments partake of the convenience and characteristics of currency itself, but if currency of the defrauded bank had in specie been forwarded direct to appellant by the cashier Ritter for his own purposes, with notice or knowledge on part of the appellant of the ownership and rights of the bank therein, there could be no doubt of the obligation of appellant to make restitution of such sums, and in legal contemplation the situation here displayed is substantially the same as such illustration. The same rule of law governs the agency of a cashier, as applicable to any other fiduciary relationship, and the right of recovery of the principal's funds from the party obtaining them from the agent with the full knowledge of their misappropriation is too apparent to admit of reasonable debate. Nor is it clear that vigilance and due performance of their duty by the officers of the bank would have revealed the fraud being practiced, and the misappropriation of the funds by the cashier, as the record in the books of the bank of the drafts was falsified, and therein they purported to be drawn in favor of other payees than appellant. The legal principles governing the situation here presented have been recognized in this and other jurisdictions, and in other States decisions have been invoked upon facts strikingly analogous to those here exhibited. Lee v. Smith, 84 Mo. 304; Lamson v. Beard, 94 Fed. 30; Mendel v. Boyd, 91 N. W. 860; Anderson v. Kissam, 35 Fed. 699; Campbell v. Bank, 67 N. J. L. 301.

2. The appellant interposed as its answer a general denial and without amendment, tendered proof of a secured note given by Ritter after the last of the

drafts had been transmitted and of acceptance by the directory in settlement. No application to amend the answer was made, and such testimony was properly excluded. The evidence sought to be admitted was not proof of payment, but so far as imperfectly disclosed, might have established a settlement of overdrafts and in absence of even a synopsis in the record of the form of plaintiff's statement of its cause of action, it can not be conjectured how the decisions appealed to by appellant are pertinent. The case of State ex rel. v. Peterson, 142 Mo. 526, merely declares that a special plea of payment is not essential, when the allegation of nonpayment is a necessary and substantial averment to constitute plaintiff's cause of action.

3. The testimony sought to be elicited from the banking expert, to the effect that it was a general custom for cashiers of banks to draw drafts upon their own banks in payment of their own indebtedness was not admissible. The drafts in question were not drawn in such form, and the line of inquiry not addressed to the state of facts developed, but if such custom prevailed and had been established, it would have been in violation of law and the legal consequence could not have been avoided, that the payee of such drafts would have been liable to repay to their actual owner such unlawfully diverted funds, under such facts as are disclosed here.

The judgment was for the right party and is affirmed. *Bland, P. J.,* and *Goode, J.,* concur.