ST. CHARLES SAVINGS BANK, Respondent, v. ORTHWEIN ° INVESTMENT COMPANY, Appellant.

St. Louis Court of Appeals, November 7, 1911.

1. STATUTE OF LIMITATIONS: Accrual of Cause of Action: Money Had and Received. Where a bank cashier paid his personal obligation with funds of the bank, by means of a draft drawn on another bank, the Statute of Limitations did not begin to run on the bank's cause of action against the person to whom such payment was made, for money had and received, until the draft was collected from the drawee.

2. TRIAL PRACTICE: Directing Verdict: Undisputed Facts. The rule that a defendant is entitled to have the jury determine the credibility of the testimony offered by plaintiff, though no evidence is offered to contradict it, does not apply so as to

160 App.—24

prevent the direction of a verdict, where defendant's statements and attitude during the progress of the trial clearly indicate that he does not seriously dispute the existence of any of the facts essential to plaintiff's recovery.

3. BANKS AND BANKING: Authority of Cashier: Payment of Personal Debt With Bank's Funds: Liability of Payee: Burden of Proof. In an action as for money had and received, in that the cashier of plaintiff bank drew drafts against its deposit in other banks and transferred them to defendant to cover losses in speculative transactions of his own, *held* that the drafts disclosed on their face to one having defendant's knowledge, that the cashier was exercising his authority as cashier in favor of himself as principal, and hence they were presumptively void and the obtention of them by defendant was presumptively illegal; and the burden of proof was on defendant to overthrow such presumptions.

4. ————: ————: ————: Directing Verdict: Trial Practice. In an action for money had and received, in that the cashier of plaintiff bank drew drafts against its deposit in other banks and transferred them to defendant to cover losses in speculative transactions of his own, *held* that the court did not err in directing a verdict for plaintiff.

5. ————: ————: ————. No implied authority in a cashier of a bank to issue drafts for his own benefit can arise from the general course of business in the bank, nor does the bank become bound by the cashier's acts in issuing such drafts, because of the careless trustfulness of the directors, or of their neglect of duty, or of their having sanctioned the issuance by him of other drafts than those in question, nor because he was authorized to sign drafts on the bank's correspondents on his own account.

6. PRINCIPAL AND AGENT: Power of Agent: Dealing with Himself. So abhorrent to the law is the idea that an agent, as such, may deal with himself as principal, that if the prior consent of the principal be relied upon, it must be shown to have been consent to do the particular act, under the circumstances and in all respects as it was done by the agent; and such prior consent, to waive illegal acts, necessarily implies anticipation or knowledge of the facts of the particular transaction.

7. BANKS AND BANKING: Authority of Cashier: Payment of Personal Debt with Bank's Funds: Implied Authority: Sufficiency of Evidence. In an action by a bank as for money had and received, in that the cashier of plaintiff bank drew drafts against its deposits in other banks and transferred them to defendant to cover losses in speculative transactions of his

own, evidence offered by defendant, to the effect that the entire operation of the bank was entrusted to the cashier and that he managed it without supervision or check by its officers, that he was authorized to sign drafts on its correspondents, not only for its purposes, but for his own account, and that, during a stated period, he used the funds and credit of the bank in his own transactions, and executed drafts, as cashier, either to himself or directly to his creditors, and that the bank knew that such drafts had for years passed as currency in the city in which the bank was located and another city, and that the cashier entered on the bank's draft register the name of the respective payees and the amounts of such drafts, and that the bank was well aware of each of such transactions, or by exercising ordinary care to inspect its books could have so become, and that, while the cashier was so authorized, he executed and used drafts of the bank exceeding in amount $70,000, was properly excluded, since it did not show implied authority in the cashier to issue the drafts in question, but, at best, could be construed only as authorizing him to issue drafts on his own account upon condition that the bank be first paid therefor.

8. ———: ———: ———: Liability of Payee: Defenses. Where the cashier of plaintiff bank drew drafts and issued or transferred them to defendant to cover personal losses in speculative transactions, and plaintiff thereafter sued defendant for the amount of the drafts, as for money had and received, it was no defense that, after defendant received and collected the money, it either expended it as the cashier's agent, or paid it over to defendant's New York principal, since, in order to defeat plaintiff's right to recover in such action, it was incumbent on defendant to show a right in itself or in its alleged principal, at least equal to the right of plaintiff, and neither the cashier nor the New York concern had any right to the money as against plaintiff.

Appeal from St. Louis City Circuit Court.—*Hon. George C. Hitchcock,* Judge.

Affirmed.

*William R. Orthwein* and *E. T. & C. B. Allen* for appellant.

(1)   The allegations of the petition were denied by the answer, the defendant was entitled to have the jury pass upon the evidence of plaintiff, although it may not have offered any evidence at all. The peremp-

tory instruction was erroneous. Whitson v. Bank, 105 Mo. App. 617; Hugumin v. Hines, 97 Mo. App. 355; Barker v. Lewis Pub. Co., 131 S. W. 925. (2) The defendant was entitled to have the jury determine the credibility of the testimony offered, even though he offered nothing to contradict that presented by plaintiff. Nor can the court assume as a matter of law that the testimony is true, satisfactory or convincing to the jury, simply because no one by words contradicts what has been uttered. Johnson v. Grayson, 130 S. W. 673; Gannon v. Gas Co., 145 Mo. 502; Hugumin v. Hines, 97 Mo. App. 355; Carp v. Ins. Co., 104 Mo. App. 502. (3) In an action for money had and received, the extent to which a recovery can be sustained is limited to the loss suffered by the plaintiff and the profit gained by the defendant. Anything which shows that plaintiff is not entitled in equity and good conscience to recover will defeat the action. The defendant does not have to have a superior equity; it is enough if he has an equal equity. Investment Assn. v. Glendale, 99 Wis. 59; Henderson v. Koenig, 192 Mo. 691; Richardson v. Drug Co., 92 Mo. App. 521; 27 Cyc. 849 and 874; 4 Waite Action and Defense 511. (4) If a bank gives its cashier authority to draw drafts for his own account on its funds or ratifies his act in known transactions which he openly conducts, honestly or dishonestly, it will not be permitted to say that a similar transaction which he secretly and by concealment conducts does not bind it. The directors will be presumed to know what by proper diligence they should have known. Campbell v. Bank, 67 N. J. L. 304; Martin v. Webb, 110 U. S. 7; Law Reporting Co. v. Grain Co., 135 Mo. App. 10. (5) Bank or cashier's drafts are used so enormously at the present time in the payment or settlement of debts and other commercial transactions that they have almost acquired the character of money. So long as they are issued on behalf of a solvent bank, and upon a solvent bank

drawn, and signed by one of the officers usually sign-
ing such instruments, they are regarded by the com-
mercial community very much the same as so much
cash, and the fact that the draft was drawn by a cash-
ier directly in favor of his own creditor and sent to
that creditor, would not naturally give rise even to the
suspicion that there was anything irregular, fraudu-
lent or wrong in the conduct of the cashier. The pre-
sumption would be that he had performed his duty
and paid for the draft and that it therefore was his
property. Goshen Bank v. State, 141 N. Y. 379; Camp-
bell v. Bank, 67 N. J. L. 304. (6) The cause of action
set out in the first court accrued when defendant re-
ceived the draft on May 30, 1902. The suit was not
instituted until May 31, 1907. It is consequently
barred. Garrett v. Conklin, 52 Mo. App. 658; Morton
v. Nevada, 52 Fed. 353; Shelby v. Bragg, 135 Mo. 297.
(7) There was no evidence that the defendant was
guilty of bad faith in taking the drafts in question.
Plaintiff was not entitled to recover. Bank v. Romi-
nee, 136 Mo. App. 61; Brown v. Hoffelmeyer, 74 Mo.
App. 385.

*C. W. Wilson, T. F. McDearmon, Jones, Jones,
Hocker & Davis* and *Theodore C. Bruere* for respond-
ent.

(1) The cashier of a bank has no right to issue
drafts on its correspondents in payment of his indi-
vidual debts, and a creditor of a cashier who receives
such drafts takes them with notice that the cashier is
appropriating the assets of the bank for the payment
of his individual debts. The form of the draft itself
puts the creditor on inquiry and is notice to him of
the fact that the cashier is issuing the bank's funds
in his private business. Kitchen v. Com. Co., 105 Mo.
App. 463; Clifford Banking Co. v. Com. Co., 195 Mo.
262; Lee v. Smith, 84 Mo. 304; Lamson v. Beard, 94
Fed. 30; Gale v. Chase National Bank, 104 Fed. 214.

(2)   There is really no estoppel pleaded in the defendants answer. (a)  There is no allegation in the answer that defendant knew of the alleged course of conduct by the bank, or that defendant was deceived and thereby induced to receive the drafts in question. It is elementary, that no man can set up another's act or conduct as the grounds of an estoppel, unless he has been mislead or deceived thereby. Bales v. Parry, 51 Mo. l. c. 453; State ex rel. v. Setlinger, 51 Mo. App. 259; Spurlock v. Sproule, 72 Mo. 509; Burk v. Adams, 80 Mo. l. c. 514; Uekla v. Greensfelder, 52 Mo. App. l. c. 50; Rogers v. Marsh, 73 Mo. l. c. 70; Harrison v. McReynolds, 183 Mo. 533; Rozencranz v. Dry Goods Co., 175 Mo. l. c. 557; Citizens Bank v. Burns, 178 Mo. 716. (b)   The directors of the bank could not lawfully authorize the cashier to use the bank's assets for his individual purposes, nor would their failure to exercise proper supervision of his accounts render the bank liable, and no amount of negligence on their part can justify the cashier in using the bank's assets in paying his individual debts or excuse defendant for receiving the bank's assets from him in payment of his individual obligations to it. Minor v. Bank, 7 U. S. l. c. 454; Savings Assn. v. Sailor, 63 Mo. 24; Chew v. Ellingword, 86 Mo. l. c. 272; State to use v. Atherton, 40 Mo. l. c. 216. (3)   The trial court did right in directing a verdict for plaintiff. Under the evidence adduced no other verdict could have been allowed to stand. When such is the case it is the duty of the court to direct a verdict. Fahy v. Gordon, 133 Mo. 414; Adams Co. Bank v. Hainline, 67 Mo. App. 483; Stephens v. Koken Barber Supply Co., 67 Mo. App. 587; Wolff v. Campbell, 110 Mo. 114; Brewery Co. v. Schoenlau, 32 Mo. App. 357; Woodson v. Richtie, 36 Mo. App. 506; Mitchell v. Bradstreet Co., 116 Mo. 226; Clemmens v. Knox, 31 Mo. App. 185; Hite v. Railroad, 130 Mo. l. c. 141; Reichenbach v. Ellerbe, 115 Mo. l. c. 595; Magoffin v. Railroad, 102 Mo. 540; Stokes v.

Burns, 132 Mo. 214; Holmen v. Leadbetter, 95 Mo. App. 419; Mathews v. Loth, 45 Mo. App. 455.

STATEMENT.—Action for money had and received. A trial being had, the court, at the close of all the evidence, instructed the jury to return a verdict for the plaintiff, and the defendant has appealed from the judgment entered on such verdict. As no point is made on the pleadings, it is unnecessary to set them forth.

It appeared from the evidence offered by the plaintiff that during the year 1902, the plaintiff was doing a general banking business at St. Charles, Missouri, having A. F. Mispagel as its cashier. It kept funds on deposit in St. Louis with the American Exchange Bank and the Mechanics National Bank, subject to withdrawal by means of drafts issued by the cashier. The defendant was doing a general brokerage business in the city of St. Louis, and Mispagel had a great many dealings with or through the defendant of a speculative nature, dealing in "puts and calls," buying and selling wheat, stocks, etc. These transactions were strictly on his own account and not in any way connected with the plaintiff bank, or its business. In the course of them he issued and delivered to the defendant from time to time nine drafts numbered, dated and in amounts as follows:

| Number of Draft. | Dated. | Amount. |
|---|---|---|
| 95288 | May 29, 1902 | $ 900.00 |
| 95563 | June 11, 1902 | 488.92 |
| 90049 | July 1, 1902 | 500.00 |
| 97142 | Sept. 23, 1902 | 500.00 |
| 97199 | Oct. 14, 1902 | 300.00 |
| ——— | Oct. 15, 1902 | 500.00 |
| 97345 | Oct. 21, 1902 | 1000.00 |
| 97985 | Nov. 20, 1902 | 1000.00 |
| 98525 | Dec. 12, 1902 | 400.00 |
| Total | | $5588.92 |

Each of the drafts was signed by Mispagel as cashier of the plaintiff bank, in favor of the defendant, as payee, and was addressed either to the American Exchange Bank or the Mechanics National Bank of St. Louis, as drawee. They were received from Mispagel by the defendant and collected by it from the drawee bank, being deducted from the funds of the plaintiff on deposit with such drawee bank. The first draft for $900, dated May 29, 1902, was received by the defendant on May 31, 1902, and collected from the drawee bank June 3, 1902. The other drafts were received and collected thereafter. The case presented was one of clear embezzlement by the cashier. Nothing was ever paid to the plaintiff bank for any of the drafts, nor was the money collected on them ever refunded to it. The proceeds of the drafts, after being collected by the defendant, were applied toward the payment of the cashier's individual account with the defendant, arising out of the speculative transactions we have mentioned. The evidence on behalf of the plaintiff was clear and convincing and entirely uncontradicted. It consisted of the nine drafts and their endorsements, which were introduced in evidence; the testimony of plaintiff's secretary; the accounts which had been rendered by the defendant to Mispagel and showed the receipt by defendant of the drafts and the application of the proceeds to his individual account; and the testimony of defendant's cashier that the drafts passed through his hands as cashier of the defendant and were applied to Mispagel's individual account with the defendant. No evidence was offered by the defendant or elicited by it on cross-examination, tending to disprove the evidence offered on behalf of plaintiff, or to impeach plaintiff's witnesses. Defendant appears to have assumed the attitude at the trial that while as payee it did receive from Mispagel and collect the drafts drawn by him against the funds of the bank in matters not connected with the business of the bank,

defendant was not liable in this action because of the facts of which it unsuccessfully made tender of proof as hereinafter mentioned. In the course of the trial, defendant's counsel stated that the drafts had passed through the hands of its cashier. When part of the accounts rendered by it to Mispagel were offered in evidence showing the receipt of six of the drafts and the crediting of their proceeds to Mispagel's private speculative account, its counsel suggested that such accounts represented only part of the transactions. It offered evidence, which the court excluded, that in its transactions with Mispagel, it had acted either as the agent of Mispagel or as the agent of a New York concern, dealing with Mispagel, and the proceeds of the drafts had been either disbursed by it as the agent of Mispagel, or turned over by it to its principal, the New York concern. This was the only evidence offered by the defendant. On cross-examination of plaintiff's secretary, the defendant, being checked by an objection, made tender of proof as follows: "That the St. Charles Savings Bank entrusted the entire operation of the bank to its cashier, Mr. Mispagel, and that he managed the affairs of the bank without supervision or check by the officers or directors thereof, was authorized to sign drafts on its correspondents, not only for its purposes, but also on his own account, and to that end plaintiff placed blank forms of drafts in his possession, and that between May and December, 1902, he used the funds and credit of the bank in his own transactions, and executed drafts for the plaintiff in his official capacity payable either to himself or directly to his creditors; and plaintiff knew that the drafts so executed had for years passed as currency in the cities of St. Charles and St. Louis, Missouri, and were uniformly accepted without inquiry or suspicion as so much cash; that during said period of time Mispagel entered upon the stub of the draft register of plaintiff not only the name of the real payee, but also

the amount contained in the draft; that plaintiff was well aware of each transaction, or by mere inspection of its books could have so become, by the exercise of ordinary care, and authorized, sanctioned and ratified such acts—and that also while Mispagel was so authorized by the plaintiff did so execute and use drafts of plaintiff, in a large amount, in excess of $70,000.''

This tender of proof was rejected by the trial court and the defendant duly excepted.

At the close of all the evidence the court refused an instruction offered by the defendant in the nature of a demurrer to the evidence, and also refused divers instructions offered by the defendant and which in general reflected the theories presented by its tenders of proof.

The court peremptorily instructed the jury to return a verdict for the plaintiff for the amount of the drafts, together with interest at the rate of six per cent per annum, from May 31, 1907, the day suit was commenced.

CAULFIELD, J. (after stating the facts).—I. Defendant pleaded and still contends that the cause of action as to the money received on the draft dated May 29, 1902, for $900 was barred by the five years Statute of Limitations. This draft was not collected from the drawee bank until June 2, 1902. Until then the cause of action for money had and received did not accrue, and the period of limitation did not commence. The suit was brought within that period, or on May 31, 1907, and was therefore brought in time.

II. The defendant next contends that the court erred in peremptorily instructing the jury to find for the plaintiff, and asserts that the defendant was entitled to have the jury determine the credibility of the testimony offered, though offering nothing to contradict it. There can be no doubt that the rule thus sought to be invoked is sound and well established.

[Gannon v. Gas Co., 145 Mo. 502, 46 S. W. 968, 47 S. W. 907; Barker v. Lewis Publishing Co., 152 Mo. App. 706, 722, 131 S. W. 924, 929.] But it is not to be applied so as to convict the trial court of error in directing a verdict for the plaintiff where the statements and attitude of the defendant during the progress of the trial, clearly indicated that it was not seriously disputing the existence of any of the facts essential to plaintiff's recovery. The trial court may assume such apparently uncontroverted facts for the purpose of instructing the jury. [Davidson v. Transit Co., 211 Mo. 320, 360, 109 S. W. 583.]

Applying this test to the record before us, we are satisfied that defendant did not seriously dispute that the drafts were received and collected by defendant and their proceeds applied by it to the credit of the cashier's account in purely personal and speculative transactions. As the drafts were drawn by Mispagel as cashier in favor of the defendant against the account of the plaintiff bank, they disclosed on their face, to one having the knowledge defendant possessed, that Mispagel was exercising his authority as cashier or agent in favor of himself as principal. They were then presumptively void and the obtention by the defendant of the money on them presumptively illegal, and the burden was on the defendant to overthrow such presumption. [Mercantile Mut. Ins. Co. v. Hope Ins. Co., 8 Mo. App. 408; Lee v. Smith, 84 Mo. 304.]

The court did right, then, in directing a verdict for plaintiff, unless the facts of which proof was tendered by the defendant were sufficient to sustain such burden. These we have considered and found insufficient. No implied authority in the cashier to issue drafts for his own benefit could arise from the general course of business in the bank (Lee v. Smith, 84 Mo. 304, 310); nor could the bank become bound by the cashier's acts in issuing such drafts, because of the careless trustfulness of the directors, or of their neg-

lect of duty (Kitchens v. Teasdale Com. Co., 105 Mo. App. 463, 468, 79 S. W. 1177); nor by their having sanctioned the issuance by him of other drafts than those in question. [Mercantile Mutual Ins. Co. v. Hope Ins. Co., 8 Mo. App. 408.] ''There cannot be a course of dealing in reference to illegal acts; and prior consent or subsequent ratification, to waive the illegality, necessarily implies anticipation or knowledge of the facts of the *particular transaction*." [Mercantile Mut. Ins. Co. v. Hope Ins. Co., supra.] Nor was it sufficient that the cashier ''was authorized to sign drafts on its (plaintiff's) correspondents, . . . on his own account." So abhorrent to the law is the idea that an agent, as such, may deal with himself as principal, that if prior consent of the principal be relied upon, it must be shown to have been consent to do the particular act, under the circumstances, and in all respects, as it was done by the agent. Such prior consent, to waive the illegality, necessarily implies anticipation or knowledge of the facts of the particular transaction. [Mercantile Ins. Co. v. Hope Ins. Co., 8 Mo. App. 408.] The alleged authority of which proof was tendered did not measure up to that standard. At best it would be construed to authorize the cashier to issue drafts on his own account upon the usual and very proper condition that the bank be first paid therefor. It did not contemplate the issuance of the drafts before us under any circumstance disclosed by the evidence.

III. We are further of the opinion that the proof offered that after the defendant received and collected the money on the drafts it either expended the money as Mispagel's agent or turned it over to its (defendant's) New York principal is insufficient to exonerate the defendant from liability herein. The test in this case is whether in equity and good conscience, in view of the special facts of the case, defendant was entitled

to retain the money as against the plaintiff. In order to defeat plaintiff's suit, defendant must have shown a right, in itself or in its alleged principals, at least equal to the right of plaintiff. [27 Cyc. 874.] This it failed to do, as neither it, nor Mispagel nor the New York concern had any right whatever to this money as against the plaintiff.

The judgment is affirmed. *Reynolds, P. J.,* and *Nortoni, J.,* concur.