PACKERS NATIONAL BANK, APPELLANT, V. GEORGE F. RUSHART, APPELLEE.

FILED MAY 14, 1915. No. 18093.

**Banks and Banking:** COLLUSIVE LOAN BY CASHIER: LIABILITY. Where the maker of a promissory note and a bank cashier are engaged in a joint enterprise, in which each has a contingent beneficial interest, and the cashier, without the knowledge of any other officer of the bank, loans money of the bank to be used in furtherance of the enterprise, taking the note of his associate, payable to the bank, for the amount loaned, the maker of the note will be held liable therefor, notwithstanding the promise of the cashier to hold him harmless.

APPEAL from the district court for Sarpy county: HARVEY D. TRAVIS, JUDGE. *Reversed with directions.*

*D. L. Johnson,* for appellant.

*Smyth, Smith & Schall, I. J. Dunn* and *J. J. O'Connor,* contra.

MORRISSEY, C. J.

This is an appeal by the Packers National Bank of South Omaha from a judgment of the district court for Sarpy county in favor of the defendant, in an action on a promissory note. The note is made payable to plaintiff, is dated

November 22, 1909, and signed by the Mohawk Mining
Company, George F. Rushart, and C. P. Moriarity, and is
for $12,625 and interest. This note was given in renewal
of a former note signed by the same parties for $11,500.
The Mohawk Mining Company was a copartnership, and
prior to the commencement of this action had been adjud-
icated a bankrupt in Oklahoma. C. P. Moriarity, the other
maker, had also been discharged in bankruptcy prior to the
commencement of this action.

There was service of summons on the defendant Rushart
only. He admitted the execution of the note, but alleged
want of consideration, claiming that he is a mere accommo-
dation maker. He alleged that Frank J. Moriarity, who
had been cashier of plaintiff bank for a long term of years,
but who died before the making of the note in suit, had
become interested in a coal mining property in Oklahoma,
and that he was desirous of borrowing the money of the
plaintiff bank without the knowledge of the other officers
of the bank; that, beginning in 1907, from time to time,
the cashier honored the drafts of the parties operating the
mine, and this defendant gave his notes to the bank to
cover the amounts thus advanced; that he had induced
defendant to sign these notes on the express promise that
he would not be held liable upon any note which he might
sign; that the drafts were paid and the money advanced
prior to the making of the note given to cover the amount
of any draft; that at the time of the cashier's death these
notes had all been merged into the one note of $11,500;
that this note, like the notes preceding it, was made at the
request of the cashier, and with the agreement that he
would hold defendant harmless; that there was no consid-
eration therefor, and that it was made for the accommoda-
tion of the plaintiff; that the plaintiff was in possession
of all the facts at the time the note was signed, and the
plaintiff advanced no sum whatever on account of said
note or as a consideration therefor. By reply these mat-
ters were put in issue, and it is alleged that the money was
loaned to defendant and C. P. Moriarity and the Mohawk
Mining Company, a copartnership composed of defendant

and C. P. Moriarity. The case was submitted to the jury, and, from a verdict and judgment in favor of defendant, plaintiff brings the cause here for review.

It is insisted that the court ought to have directed a verdict in favor of plaintiff, and this makes it necessary to consider, somewhat at length, the evidence in the case.

The record discloses that, prior to the loaning of any money by plaintiff, one E. B. Rushart (also spelled Ruysschaert), a brother of defendant, and one Bonnert were operating a coal mine in Oklahoma, and this defendant was living at Fort Crook, Nebraska, and intimately acquainted with plaintiff's cashier. Through the efforts of defendant the cashier became interested in the mine, and he caused an investigation of the property to be made, with the result that, December 22, 1906, Rushart and Bonnert made a bill of sale conveying the mining property to defendant and Charles P. Moriarity, a brother of the cashier. January 2, 1907, defendant and his brother, E. B. Rushart, and plaintiff's cashier and his brother entered into a written agreement, whereby it was provided that when all indebtedness of every character whatsoever, existing against the old firm of Rushart & Bonnert, and when all indebtedness of every character whatsoever against the new firm, composed of George F. Rushart and Charles P. Moriarity, should be paid, and when all indebtedness existing by virtue of their operation of the mine, and the balance due to Fred Bonnert on account of his contract with plaintiff's cashier should be paid, all of the rights and privileges formerly held by the firm of Rushart & Bonnert, "and now temporarily held by Charles P. Moriarity and George F. Rushart, and all of the machinery and other personal property and assets of every description now being used in the mining of coal on the north half of northwest quarter, section 22, township 20 north, range 13 east, in Indian Territory, shall be held by Frank J. Moriarity of Omaha, Nebraska, and George F. Rushart of Omaha, Nebraska, and Edward B. Rushart (spelled Ruysschaert) of Tulsa, Indian Territory, owners in common, each of said parties owning an equal undivided one-third of all of the

aforementioned property. Provided, however, until the foregoing conditions arise, that is, until the time when all of the obligations of all the foregoing named firms shall have been satisfied in full, Edward B. Ruysschaert of Tulsa, Indian Territory, shall have equal right and authority, in the operation of the coal mining claim, * * * with Charles P. Moriarity, who is, at present, managing the coal mining operations. * * * In witness whereof, we have hereunto signed our names this 2d day of January, 1907. Edward B. Ruysschaert. George F. Rushart. F. J. Moriarity.

"The above facts and conditions admitted and accepted by me. Charles P. Moriarity."

It is undisputed that the only money that was ever put into this enterprise by the defendant or either of the Moriaritys belonged to the plaintiff bank, being advanced from time to time as needed, and that the whole sum was finally merged in the note in suit. Part of the time the notes were signed by George F. Rushart alone, and part of the time by George F. Rushart, C. P. Moriarity, and the Mohawk Mining Company, the firm name under which they operated. It is also undisputed that the cashier, one of the parties to this enterprise, was the only officer of the plaintiff bank in any way interested in the enterprise, and that no other officer of the plaintiff had any knowledge whatsoever of the transactions. Defendant evidently had good credit at the bank, for he testifies: "A. Well, Mr. Moriarity let the Mohawk Mining Company have the money. He wanted me to sign those notes so his people there in the bank wouldn't catch on to it." He says that he signed the notes at the request of the cashier; that he received no money at the time of signing; but it is conceded that the money went into this mining venture. "Mr. Moriarity told me there was drafts from Oklahoma on him direct; that is, my brother and his brother—he said he paid a couple of those drafts, and he wrote a letter to him not to draw that way any more—that he better draw on me; that the people in the bank had full confidence in me and would not question anything I done; that if the money was loaned through

him it might look bad for him, and he didn't want them to catch on.  *  *  *  He told me he wrote them (referring to the parties operating the mine) a letter that they had better draw on me for it.  He said, 'I will have to use your name on this, George—not to let them people know anything about this.  This will be paid in a little while, and I will have to use your name.  I will take care of you.' And I told him 'All right.'  *  *  *  Why, he would take care of it, he said.  My name would never be known.  He said he would take care of the notes himself.  The mine was to pay him back.  Q.  You knew when you signed the first note that Mr. Frank Moriarity was interested in the mining company, did you?  A.  I knew he owned it until it was paid for."  The date of the first note is not given, but it is quite apparent that it was after the written agreement made January 2, 1907, under which defendant took an interest in the property.  Defendant has never disclaimed the interest given him under the contract signed January 2, 1907, but affirmed it on the witness stand.  On his cross-examination the following testimony was elicited: "Q.  You knew at the time the contract was signed above the bank, did you, that Mr. Moriarity, Mr. Frank Moriarity, was to have an interest in the business after the debts were paid?  A.  Yes, sir; he was to furnish the money, all the money, and then he was to have interest.  Q.  What interest was he to have?  A.  One-third.  Q.  Who was to have the other two-thirds?  A. My brother, myself, and when all the debts were paid Mr. Moriarity got his money back.  Q. That is, after all the money the bank had loaned had been paid?  A.  Yes, sir.  Q.  Then the interest in the business was to be divided into three parts, of which Mr. Frank Moriarity was to have one, his brother one and you one; is that correct?  A. Yes, sir; but this $5,000 to Mr. Bonnert was to be paid that Mr. Moriarity stood good for. Q.  That is, after all the debts, either for the purchase of the plant and payment of the running expenses, were paid, then you three were to divide it up, were you?  A.  Yes, sir; one-third each."

This, we think, makes it clear that these parties were engaged in a joint venture. The defendant was a party in interest. He signed the notes in order to procure the money to engage in the business and to operate it, and the cashier, by virtue of his position in the bank, was able to loan plaintiff's money on the faith and credit of defendant's note. They believed at this time that the business would be profitable, and that out of the dividends they would be able to pay back to plaintiff bank all of the money borrowed, and ultimately they would possess this property free and clear of all incumbrances, and this they agreed should be equally divided, one-third to defendant, one-third to the cashier, and one-third to the brother. It is entirely probable that they never dreamed of a possible failure, and that when this money was borrowed all parties honestly intended to see it paid. But this defendant knew, as his testimony shows, that the money was advanced on the faith and credit of his note; he was informed by the cashier that the other officers would not know of the undertaking, that it was necessary to have this note in order to secure the money for this enterprise, and had the undertaking proved successful and the dividends been sufficient to meet the indebtedness, as was contemplated in their agreement between themselves, he would have received an undivided one-third interest in this business, which at the time probably appeared to all of the parties very valuable. But this, like many another mining venture, failed; the cashier died; the other maker of the note was declared a bankrupt, and the defendant's dream of easy money ended in a lawsuit.

"A corporation is not chargeable with the knowledge nor bound by the acts of one of its officers in a matter in which he acts in behalf of his own interests, and deals with the corporation as a private individual, and in no way represents it in the transaction." *Buffalo County Nat. Bank v. Sharpe*, 40 Neb. 123.

There is no disputed question of fact to submit to a jury.

In *Mendel v. Boyd*, 71 Neb. 657, this court said: "It is well settled that the general authority of the cashier of a bank does not authorize him to issue drafts of the bank for himself, or for his private business. *Lee v. Smith*, 84 Mo. 304, 54 Am. Rep. 101; *Anderson v. Kissam*, 35 Fed. 699; *Lamson v. Beard*, 36 C. C. A. 56, 45 L. R. A. 822; *West St. Louis Savings Bank v. Shawnee County Bank*, 5 Otto (U. S.) 557. This rule is founded on the familiar rule of the law of agency, which forbids that an agent shall act for himself and for his principal in one and the same transaction. It is founded on sound considerations of public policy, and the recognized inability of any person to faithfully serve two masters at the same time. Consequently, when the cashier issued these drafts, he did so without authority, and his conduct is to be viewed in no more favorable light than that of any other person who, without authority, appropriates the property of another to his own use."

Defendant knew at the time the money was borrowed that the cashier was making the loan without the knowledge or authority of any other officer of the bank. He knew that it was going into this private enterprise in which defendant and the cashier were interested, and plaintiff is not bound by the promises of the cashier to hold defendant harmless.

It being proved beyond question that the money loaned by the bank was received by the Mohawk Mining Company, of which this defendant was a copartner, and that this defendant knew at the time of making the various notes, and at the time the money was advanced, that the cashier of the plaintiff was engaged in a private enterprise which he was concealing from his principal, and this defendant having a contingent beneficial interest in the enterprise, he will not be permitted to offer the statements or promises of the cashier to defeat payment of the note. The court should have instructed a verdict for the plaintiff. The judgment of the district court is reversed, with directions to enter judgment for the plaintiff.

REVERSED.

BARNES, FAWCETT and HAMER, JJ., not sitting.