# R. E. POPE v. RAMSEY COUNTY STATE BANK.[1]

### May 25, 1917.

### Nos. 20,200—(293).[2]

**Bank — payment by check — notice.**

1. A personal check of an officer of a bank drawn upon such bank and accepted in payment of the note of such officer does not charge the holder of the note with notice that there is an attempt to misappropriate the funds of the bank.

**Same — embezzlement of bank funds.**

2. There was no proof in this case that the one who presented the personal checks of the bank officer and received payment thereon knew, or had reason to suspect, that the account of such officer was largely overdrawn. The checks were presented and paid in the usual course of business, and the record indicates as well the good faith of defendant in receiving the checks as of those who participated in their collection.

**Same — no cause of action.**

3. The fact that shortly after these checks were paid the drawer's deposit account was replenished so as to more than wipe out all prior overdrafts, would seem to cancel any cause of action which might have existed for recovery against defendant.

Action in the district court for Ramsey county by the receiver of the First State Bank of McIntosh to recover $2,010. The facts are stated in the opinion. The case was tried before Hanft, J., who granted plaintiff's motion to instruct the jury to return a verdict in favor of plaintiff for the full amount demanded. From the judgment entered pursuant to the verdict, defendant appealed. Reversed.

*John I. Levin,* for appellant.

That an officer of a bank pays his individual debt with the money of his bank in the form of draft, certified check or currency, does not entitle the bank to recover from the payee. Goshen Nat. Bank v. State, 141 N. Y. 379, 36 N. E. 316; Campbell v. Upton, 66 App. Div. 434,

[1]Reported in 162 N. W. 1051. .
[2]October, 1916, term calendar.

73 N. Y. Supp. 1084; Rochester & C. T. R. Co. v. Paviour, 164 N. Y. 281, 58 N. E. 114, 52 L.R.A. 790; Gale v. Chase Nat. Bank, 104 Fed. 214, 43 C. C. A. 496; 108 Fed. 987, 46 C. C. A. 583; reversed 188 U. S. 557, 23 Sup. Ct. 372, 47 L. ed. 594. Defendant had no notice that the money of the First State Bank of McIntosh was used in payment of the personal debt of Lamb. The checks of Lamb are in evidence and the indorsements thereon by the First National Bank of McIntosh do not show on what date they were paid and the cashier of that bank testified that he did not know. If these checks were paid on the dates when the First National Bank of McIntosh paid the balance of clearances by draft to the First State Bank of McIntosh, then there is absolutely no evidence that defendant had any notice that the money of the State Bank of McIntosh was used in their payment. There is not a scintilla of evidence that the money of the State Bank of McIntosh was used in payment of the checks.

*O'Brien, Young & Stone, Frank McNulty* and *Robert Pearson,* for respondent.

The creditor knew, as a matter of law, that all money in the First State Bank of McIntosh, even if such money had come to it by deposit, belonged to that bank. Third Nat. Bank v. Stillwater Gas Co. 36 Minn. 75, 30 N. W. 440. Therefore, the creditor knew that if the check given to it by Lamb was paid by the bank, it must, as a matter of law, be paid from the funds of the bank. It knew that Lamb was president of the bank and that he had no authority to use the funds of the bank in payment of his individual obligation. See Porter v. Lien, 36 S. Dak. 18, 153 N. W. 905. The question whether defendant was a *bona fide* purchaser of the check is not in the case. This is not an action on the check, and no defense is asserted against the check. The check is material merely as evidence showing the method by which Lamb transferred to defendant the funds of his bank.

The Merchants Bank is charged with the knowledge of the facts which were known to its agent. Therefore, at the time it received the proceeds of this collection, that bank was charged with the fact known to its agent that Lamb was president and in control of the money of the McIntosh State bank, and that he paid his personal obligation in the form of his check with the property of the bank of which he was

president. When defendant accepted from the Merchants Bank the fruit of this collection, it was charged with all the knowledge of the Merchants Bank and ratified everything its agent, the Merchants Bank, had done to effect the collection and became liable for the consequences thereof.

HOLT, J.

In January, 1914, Harry A. Lamb was president of the First State Bank of McIntosh, South Dakota. The bank formerly had a cashier but he had been dispensed with. Lamb and his wife, Ruby L. Lamb, who officiated under the name of assistant cashier, conducted the active operation of the bank. The directors other than Lamb were all non-residents. This bank carried a deposit with defendant and Lamb was a stockholder in defendant bank. Defendant's officers knew that Lamb was president of the McIntosh bank. Lamb and his wife became indebted to defendant in the sum of $2,000 evidenced by a promissory note. In payment of this note Lamb gave his personal checks on the State Bank as follows: January 30, 1914, $500; February 5, 1914, $500; and February 9, 1914, $1,010. Defendant deposited each check as received with the Merchants National Bank of St. Paul. The Merchants Bank gave defendant credit for the checks on its checking account, but the credit was conditional on the fact that the checks be finally paid, and the course of business between the banks was that if such checks were not paid they would be charged back to defendant. The Merchants Bank then forwarded the checks for collection to the First National Bank of McIntosh. The custom existing between the two banks at McIntosh was this: Every day representatives of the two banks would meet, each would produce the checks or drafts it had accumulated during the day against the other, then they would exchange items, strike a balance, the bank having the larger amount would receive from the other a draft on an Aberdeen bank for the difference. No money or draft was passed for any particular item. The only persons in charge of the bank during February, 1914, were Lamb, his wife and a bookkeeper. Lamb had a deposit account in the bank. The evidence does not reveal its condition further back than September 25, 1913, on which date it was overdrawn in the sum of $1,135.89. This overdraft was reduced to $15.59 on October 30, 1913. It rose again to

large sums and seems to have been $1,773.79 when, on February 4, 1914, the first of the three checks had been presented and paid and to $4,151.86 when the last had been paid on February 13, but on March 4, 1914, a deposit of $4,500 was made, leaving a balance in favor of the depositor of $110.50. It is thus to be seen that, while the bank paid these checks when presented out of its own funds and not out of those of the drawer of the checks, still by March 4 all of these payments had been made good by a deposit of $4,500 on that day, so that a balance of $110.50 was to the credit of Lamb. In June, 1915, plaintiff was appointed receiver, and thereafter brought this action to recover the money paid on the three checks mentioned to defendant. The trial court directed a verdict in favor of plaintiff. Defendant appeals from the judgment entered.

No doubt, when the checks were presented and paid, the payment was made, not out of the fund to the credit of the drawer of the checks, but from the funds of the State Bank of McIntosh, and if defendant was chargeable with notice or knowledge thereof upon this record the judgment is right, unless the fact that, a short time thereafter, as above stated, the overdraft was made good changes the result. There is no evidence that any officer of defendant, or any of the banks, or the officers or agents of the banks through whom collection was made, had any actual knowledge or suspicion that the drawer of the checks did not have ample funds to his credit at the State Bank of McIntosh to meet them.

We shall assume, for the purposes of this case, that the course of business between defendant and the Merchants National Bank of St. Paul justified the court in holding the latter the agent of defendant in the collection of these checks, also that the First National Bank of McIntosh, selected by the Merchants National Bank to present and receive payments of the checks, became the agent of defendant, so that the latter is concluded by the notice or knowledge imparted to or possessed by such agent, though this is contrary to the rule of Streissguth v. National Ger. Am. Bank, 43 Minn. 50, 44 N. W. 797, 7 L.R.A. 363, 19 Am. St. 213; Fort Dearborn Nat. Bank of Chicago v. Security Bank of Renville, 87 Minn. 81, 91 N. W. 257.

Plaintiff invokes the salutary doctrine that one who receives an

obligation of a corporation from the officer or agent who issued it in payment of the latter's personal debt, is charged with notice of want of authority in the officer or agent to execute the obligation. The presumption is against the right or authority of an officer or agent of a corporation to execute its obligation for his own use. Anderson v. Kissam (C. C.) 35 Fed. 699; Lamson v. Beard, 94 Fed. 30, 36 C. C. A. 56, 45 L.R.A. 822; Kenyon Realty Co. v. National Deposit Bank, 140 Ky. 133, 130 S. W. 965, 31 L.R.A.(N.S.) 169; Kitchens v. Teasdale Commission Co. 105 Mo. App. 463, 469, 79 S. W. 1177; Campbell v. Manufacturers Nat. Bank, 67 N. J. Law, 301, 51 Atl. 497, 91 Am. St. 438; Claflin v. Farmers & Citizens Bank, 25 N. Y. 293; Rochester & C. T. Road Co. v. Paviour, 164 N. Y. 281, 58 N. E. 114, 52 L.R.A. 790; Rankin v. Chase Nat. Bank, 188 U. S. 557, 23 Sup. Ct. 372, 47 L. ed. 594. All of these cases, and others to which our attention has been directed, relate to obligations of corporations made out by the officer or agent who used them for his personal purposes to the knowledge of those who received them.

The checks here were not and did not purport to be the obligation of the State Bank of McIntosh, or represent its money. They were the individual obligations of H. A. Lamb, the drawer. There is a . marked distinction between a check of a depositor and a cashier's check, a certified check, or a draft, with reference to the obligations of the bank concerned. The first mentioned creates no liability on the part of the bank upon which it is drawn, except to pay it when presented out of the funds in its hands to the credit of the drawer, whereas a cashier's check, a certified check or a draft are the absolute obligations of the bank issuing them. Lamb was not representing the bank when he drew and tendered his personal checks to defendant. To do that he needed no authority from the bank on which they were drawn and, we apprehend, he needed none to keep a checking account there. We assume it to be a general practice for the officers and employees of a bank to patronize it with such deposits and checking accounts as they may wish to keep. Therefore, defendant, in accepting these checks of Lamb, could not be charged with any notice that they were to be paid out of the bank funds, or that there was any lack of authority in the drawer to issue them. In fact there could be no agency involved in

their issuance. Defendant evidently received them in good faith, for the note which they were given to pay together with collateral notes or pledges, in the amount of about $3,000, were at once returned to Lamb.

It must therefore be held that in accepting these checks there was nothing to charge defendant with notice of an intended misappropriation of the funds of the State Bank of McIntosh. Was there anything in the presentation for payment and receiving payment which, as a matter of law, charges defendant with notice or knowledge that the money was not from the drawer's account, but was the money of the bank wrongfully appropriated? It will not be questioned, we believe, that one who receives from the president of the Merchants National Bank in St. Paul a check, drawn on that bank, in payment of the personal note of such president, and obtains the money upon presentation to the paying teller of the bank, cannot thereafter be called upon to refund that money by mere proof that the president's account was overdrawn. Such a transaction would seem to be as legitimate and safe to the person so receiving the money on the check as if he had been paid in currency instead of by check. Here defendant in collecting these checks pursued the ordinary legitimate business course. So did the First National Bank of McIntosh in presenting them for payment and receiving the amount. There was nothing to advise that bank that Lamb's account was overdrawn, or to suggest such a state of affairs. The ones in charge of the State Bank of McIntosh were attending to their duties in the customary way. In the cases hereinbefore cited, notice of the corporation's ownership of the funds came from the instrument itself. In the absence of such notice there must be proof that the one who receives the money knows or has reason to believe the same to be a misappropriation. There was no such proof here. The fact that to the knowledge of the First National Bank of McIntosh the State Bank had only Mr. Lamb, his wife, and a bookkeeper in charge of its business, and that Mr. Lamb served both as paying and receiving teller and adjusted clearings does not signify.

There is no justice or equity in plaintiff's favor in this case. As already stated, while these checks were paid notwithstanding the drawer's deposit account was then overdrawn, still, within three weeks thereafter,

more than enough was deposited by him to cover the overdraft and leave a balance in his favor. This in itself would seem to indicate that, so far as concerned the payment of these particular checks, the bank's cause for complaint, or of action, was wiped out by the adequate deposit of March 4, 1914. Its receiver stands in no better position now than the bank did on the date last named. Wrong doings of Lamb, if any, subsequently committed, should not revive a cause of action against defendant.

The judgment should be reversed.

So ordered.

HALLAM, J. (concurring).

I concur in the result, but solely because of the fact that Lamb, after he had paid his own checks out of the assets of the bank, made a deposit sufficient in amount to cover all funds that had been withdrawn. In view of that fact, the bank has no grievance.

With the other reasons given for the decision, I do not agree. I am of the opinion that when an officer of a bank pays his own check, given for his own debt, out of the assets of the bank, without authority so to do, the person receiving the payment, with knowledge that the assets of the bank are being used, is chargeable with notice of the officer's want of authority to appropriate the bank's funds to his own use. If such officer in the first instance pays his note out of the funds of the bank without the medium of a check, the payee is chargeable with notice of his want of authority to use the bank funds for that purpose. See Chrystie v. Forster (C. C. A.) 61 Fed. 551, 9 C. C. A. 606; Gerard v. McCormick, 130 N. Y. 261, 29 N. E. 115, 14 L.R.A. 234; Hier v. Miller, 68 Kan. 258, 75 Pac. 77, 63 L.R.A. 952. The case is not changed by the fact that he first gives his check on the bank and then himself pays the check out of assets of the bank.

Such case is very different from one where another officer or agent of the bank pays the check on presentment.