JOHN C. JOHNSON and Another v. ROBERT G. DUN and Others.

February 2, 1899.

Nos. 11,475—(215).

**Principal and Agent—Conversion of Bond to Release Attachment by. Attorney of Mercantile Agency—Measure of Damages.**

The plaintiffs delivered to the defendants certain notes for collection. The latter sent them to their attorney in the state of Connecticut, who there brought suit on them and attached the property of the maker. The attachment was voluntarily released in consideration of a bond to pay any judgment that might be finally recovered. The statute of that state provides that an attachment may be released by the court, on application and giving a bond to pay the judgment, not exceeding the value of the . property attached. The plaintiffs recovered judgment on the notes, but declined to pay the attorney's fees until the judgment was collected. Thereupon the attorney settled the judgment, and surrendered the bond, as satisfied, to the obligors. *Held*, that the act of the attorney was a conversion of the bond, for which the defendants were liable; and, further, that the bond cannot be construed as a statutory bond for the dissolution of the attachment, but that it is a common-law bond for the payment of the judgment, and the measure of damages in this action for a conversion of the bond is prima facie the amount of the judgment which it secured.

Action for conversion in the district court for Hennepin county. The cause was tried before Simpson, J., and a jury, which rendered a verdict in favor of plaintiffs for $8,297.65. From an order denying a motion for a new trial, defendants appealed. Affirmed.

*William W. Bartlett, W. E. Hale* and *W. W. Macfarland,* for appellants.

Defendants, being innocent of wrong, are liable only for plaintiffs' pecuniary loss immediately resulting from the wrongful acts of the subagent. Hoover v. Wise, 91 U. S. 308, 311; Allen v. Merchants, 22 Wend. 215, 34 Am. Dec. 289, and cases cited in note; Borup v. Nininger, 5 Minn. 417 (523); First National v. Fourth National, 77 N. Y. 320; Story, Ag. §§ 217–221. Plaintiffs have not shown a right to damages, for Burr's wrongful acts deprived them

of no legal rights. They sustain the same relations to Burr and to the obligors in the bond that existed before his futile act. Beers v. Hendrickson, 45 N. Y. 665. It was error not to permit defendants to show the value of the interest attached. Even Burr, as defendant in trover, would have had the right to show this. Daggett v. Davis, 53 Mich. 35. All that plaintiffs could recover, on any theory, would be the actual pecuniary value of the bond, less the amount of Burr's liens. There is nothing in the statute authorizing the condition found in the bond for absolute payment of the judgment, and the bond, having been taken as a condition for releasing the attachment, must be presumed to be, and to have been intended to be, the form of bond required by the statute. See Tomlin v. Green, 39 Ill. 225; Hall v. Cushing, 9 Pick. 395, 403; Post v. Doremus, 60 N. Y. 371; Heynemann v. Eder, 17 Cal. 434; Bolton v. Robinson, 13 Serg. & R. 193; Couchman v. Lisle (Ky.) 33 S. W. 940; Morgan v. Menzies, 60 Cal. 341; Perry v. Post, 45 Conn. 354; Billings v. Avery, 7 Conn. 235; Fowler v. Bishop, 32 Conn. 199; Dayton v. Merritt, 33 Conn. 184. The value of the bond was the value of the interest attached, and the burden was on plaintiffs to prove it. It is a debatable question whether the destruction of commercial obligations, as the result of negligence, involves the loss of the money they represent; but if a presumption in favor of their face value exists, the contrary may be proved. Allen v. Suydam, 20 Wend. 321. See also Allen v. Merchants, supra.

*W. A. M'Dowell,* for respondents.

A collection agency receiving a claim for collection, in the absence of a stipulation to the contrary, is liable for the negligence and bad faith of its correspondent. Streissguth v. National G. A. Bank, 43 Minn. 50; Exchange Bank v. Third Nat. Bank, 112 U. S. 276; Simpson v. Waldby, 63 Mich. 439; Bradstreet v. Everson, 72 Pa. St. 124; Mechem, Ag. § 515, et seq.; Walker v. Stevens, 79 Ill. 193; Morgan v. Tener, 83 Pa. St. 305. The court properly instructed the jury that, in determining the contract, they might take into consideration the previous course of dealing and all correspondence throwing light thereon. First Nat. Bank v. Jagger, 41 Minn. 308. The question as to the burden of proof is governed by Greengard v.

Fretz, 64 Minn. 10. But the burden of proof is not in issue. As soon as the conversion was proved plaintiffs made out a prima facie case. Nininger v. Banning, 7 Minn. 210 (274). The misconduct of defendants was such that the wrongful act of Burr was their act. Story, Ag. § 217a. The legal consequences flowing from an elec-. tion of causes of action remain as at common law. At common law, in case of conversion, plaintiff might sue in case, replevin or trover, and subsequently he might sue for money had and received. 7 Enc. Pl. & Pr. 368. Recovery of judgment in trover, with satisfaction of judgment, vested title to the property converted in the wrong-doer, and many cases hold that mere recovery of judgment had the same effect. 6 Wait, Act. & Def. 224; Cooley, Torts, 537. Recovery of judgment in an action on the case for damages had no such effect, but the damages were treated as covering the detention. 6 Wait, Act. & Def. supra. The cases cited by defendants are cases of actions for negligence in which the title remained in plaintiff, even after recovery of judgment.

Burr's act amounted to a conversion. Had he been sued on the bond, he could not have claimed that the effect of his act was not to devest plaintiffs of title to the bond, nor can defendants so claim. Syeds v. Hay, 4 Term R. 260; 6 Wait, Act. & Def. 164; M'Combie v. Davies, 6 East, 538; Kempker v. Boblyer, 29 Iowa, 274; Coopwood v. Baldwin, 25 Miss. 129; Pollard v. Rowland, 2 Blackf. 22; Webber v. Davis, 44 Me. 147; Davis v. Buffum, 51 Me. 160; Nelson v. King, 25 Tex. 655; Connor v. Hillier, 11 Rich. 193; Ayres v. French, 41 Conn. 142; Comparet v. Burr, 5 Blackf. 419; Stephenson v. Feezer, 55 Ind. 416; Donnell v. Thompson, 13 Ala. 440; Clowes v. Hawley, 12 Johns. 483, 486; Lewis v. Gamage, 1 Pick. 346, 350.

The bond was not a statutory bond, but a common-law bond, and was binding according to its terms. 4 Am. & Eng. Enc. 671–673. A voluntary obligation on valid consideration is enforceable according to its terms, unless it is contrary to public policy or forbidden by statute; and where parties have received the benefit contracted for they cannot question its binding obligation on the happening of the contingency. Abbott v. Williams, 15 Colo. 512; Slutter v. Kirkendall, 100 Pa. St. 307; Wright v. Keyes, 103 Pa. St. 567;

Central v. Stewart, 133 Mass. 461; Palmer v. Vance, 13 Cal. 553; Smith v. Fargo, 57 Cal. 157; Gardner v. Donnelly, 86 Cal. 367; Bunneman v. Wagner, 16 Ore. 433; Staples v. Fillmore, 43 Conn. 510; Enscoe v. Dunn, 44 Conn. 93.

START, C. J.

On October 1, 1891, the firm of Dunham & Johnson, consisting of John Dunham and the plaintiff John C. Johnson, delivered to the defendants, R. G. Dun & Co., a mercantile agency, having a collection department, promissory notes, made by J. E. Boyd, of the aggregate face amount of $5,150 for collection. The defendant sent the notes to Lyman S. Burr, an attorney at law at New Britain, Connecticut, who on September 26, 1892, commenced an action against Boyd in the state of Connecticut on the notes, "factorizing" Chisholm, Boyd & White, the company of which Boyd was a member. Thereupon the firm of Chisholm, Boyd & White executed to the plaintiffs in the action a bond in the sum of $10,000, in consideration of which the attachment was released. The condition of the bond is in these words:

"The condition of the obligation is such that, whereas, by writ dated at New Britain, Connecticut, September 22nd, A. D. 1892, there was attempted to be attached goods, effects and estate of the said obligors, or of said Boyd, alleged to be concealed in the hands of the Yale Brick Company, a corporation doing business at Berlin, Connecticut, in a cause of action wherein said obligees are plaintiffs and said Boyd is defendant, returnable to the superior court for Hartford county, Connecticut, on the first Tuesday of October, 1892: Now, therefore, in consideration of the release of said attachment against said Yale Brick Company by said Dunham & Johnson, if said Chisholm, Boyd & White, said obligors, or either of them, shall pay the judgment that may be finally recovered against said Boyd in said suit, on execution issued, then this obligation shall be null and void; otherwise, of full force and virtue."

The result of the action against Boyd was a judgment in favor of the plaintiffs in the sum of $7,221.04. The plaintiffs herein, John C. Johnson & Co., succeeded the firm of Dunham & Johnson, and own its assets. The fee charged by Burr for securing the judgment was $1,500, which included $500 for the fees of associate counsel. He wrote several letters to Dun & Co. and to the plaintiffs, asking pay for his services, but nothing was paid except $200,

to apply on costs and disbursements; the plaintiffs refusing to pay anything further until the judgment was collected. Afterwards, and about August 10, 1894, Burr wrote Dun & Co. that he could sell the bond in question to the sureties for about $5,000, payable in cash and notes, and that he proposed to do so in order to get money to pay his fees, to which Dun & Co. replied: "We trust that you will not do anything so rash as to sell this bond because Mr. Johnson has been dilatory in paying attorney's fees." He did, however, without the authority of either of the parties to this action, settle the judgment, and surrendered, as satisfied, the bond to one of the obligors thereof, in consideration of $5,000, payable in promissory notes, one of which, for $1,800, was payable to Burr, and the balance to R. G. Dun & Co., to whom Burr sent the notes payable to them, with a report of the transaction. The plaintiffs refused to accept this settlement, and brought this action against Dun & Co. to recover damages for the conversion of the bond. The plaintiffs had a verdict for $8,297.65, and the defendants appealed from an order denying their motion for a new trial.

1. That the act of Burr in disposing of the bond was a conversion is too obvious to admit of reasonable controversy. "Any distinct act of dominion, wrongfully exerted over one's property, in denial of his right, or inconsistent with it, is a conversion." Cooley, Torts, 448. Whether the defendants were liable for the wrongful act of Burr was one of the issues at the trial, the determination of which depended on the contract between the plaintiffs and defendants as to the collection of the notes against Boyd. The plaintiffs claimed that the contract was a general and unlimited one to undertake the collection of the notes for them, while the defendants claimed that the contract was a limited one, whereby they were to transmit the notes for collection to an attorney, for whose acts or omissions they were not to be responsible, except for money actually collected by him and not paid over. The jury found for the plaintiffs on this issue, but the defendants here urge that the finding is not sustained by the evidence. We have examined the record, and find that the verdict in this respect is sustained by the evidence.

The defendants also assign as error the refusal of the trial court to give, as applicable to this issue, their requests Nos. 1 and 2.

They both refer to the effect to be given to the evidence relating to the previous course of business between the parties in determining what the contract was as to the collection of the particular notes in question. The requests occupy more than a page and a half of the paper book, and are so manifestly argumentative and misleading that it would have been error to give either of them. 11 Enc. Pl. & Pr. 142. The trial court, however, did instruct the jury that, in determining what the contract was, they might take into consideration the previous course of dealing between the parties, and all of their correspondence tending to throw any light thereon, and correctly submitted the issue to them. The defendants having accepted the notes for collection without any limitations of their liability, it follows that they are liable for the acts of their attorney, Burr. Streissguth v. National G. A. Bank, 43 Minn. 50, 44 N. W. 797.

2. This brings us to the consideration of the measure of the plaintiffs' damages. The defendants' claim is that, inasmuch as they are personally innocent of any wrong in the premises, the plaintiffs can only recover from them the actual pecuniary loss resulting directly from the act of their attorney, Burr; that he acted without authority, and hence the plaintiffs' right and title to the judgment, and the bond securing it, were unaffected by his act; that they may still enforce the judgment and reclaim the bond, and therefore the plaintiffs are entitled to only nominal damages.

If this were an action to recover damages sustained by reason of the fraud or negligence of the defendants' agent and attorney, and their own good faith was unquestioned, the damages would be limited to such actual loss as directly resulted from the fraud or negligence. A recovery in such an action would not affect the plaintiffs' title to the judgment or bond. The authorities cited and relied on by the defendants are such cases; hence they are not applicable to this action, which is not an action on the case for consequential damages sustained by the fraud of defendants' agent. It is, in its essence and legal consequences, an action of trover for the conversion of the bond. A recovery in such an action, and satisfaction of the judgment, vests the title to the property converted in the wrongdoer. Cooley, Torts, 537. The plaintiffs' remedy

was not limited to a contest with the obligors of the bond for its recovery and reinstatement as security for the payment of the judgment. They had a right to acquiesce in what had been done, and look to the parties through whose interference with their property the contest had been thrown upon them, and hold the parties for a conversion. Hossfeldt v. Dill, 28 Minn. 469, 10 N. W. 781; Appleton Mill Co. v. Warder, 42 Minn. 117, 43 N. W. 791. Assuming, then, that the bond secured the payment of the judgment absolutely, and not simply to the extent of the value of the property released in consideration of the bond, the measure of the plaintiffs' damages was prima facie the amount of the judgment which the bond secured. Nininger v. Banning, 7 Minn. 210 (274). If any facts existed, such as the insolvency of the obligors, which affected the value of the bond, the burden of establishing them rested upon the defendants.

The defendants further contend that the bond, although on its face importing an absolute undertaking to pay any judgment the plaintiffs might recover against Boyd, must be construed as conditioned to pay the judgment, not exceeding the value of the property attached, which is the condition of a statutory bond of Connecticut for the release of any attachment. This question was properly raised on the trial by offers of evidence and requests for instructions to the jury, which were refused by the trial court. If the bond was given as a statutory bond, pursuant to the provisions of the statute of Connecticut set forth in the answer herein, as the defendants claim, then their contention is correct. But if it is a voluntary common-law bond, given in consideration of the voluntary release of the attachment, it must be given effect according to its terms, and held to secure the payment of the judgment unconditionally.

Counsel for defendants assert that the complaint in effect alleges that the bond was a statutory one, because it pleads the statute of Connecticut authorizing the issuing of attachments, and alleges that the bond was given to procure a release of the attachment. This is not a proper or permissible construction of the complaint, for it contains no suggestion of any statutory provisions for the release of the attachment by the court, or the giving of a bond, or

that the bond was given pursuant to any statutory provisions. The answer sets out the provisions of the statute of Connecticut for the release of attachments, and alleges that the bond was null and void, for the reason that the same was not given in compliance with such statutory provisions, but contrary thereto. Conceding, however, that the answer, taken as a whole, may be construed as alleging that the bond was intended as a statutory bond to secure the release of the attachment, the reply put the matter in issue.

It must be conceded that, where a bond is executed in an attempted compliance with a statute authorizing it, but it contains conditions in excess of those required by the statute, it is void, at least as to such conditions, and that there can be no recovery on the bond, beyond the conditions prescribed by the statute. The cases cited by defendants support this proposition, but none of them controvert the equally well-settled proposition that a voluntary bond, other than an official bond, based upon a valid consideration, is enforceable as a common-law bond according to its conditions, although they are more onerous than would have been required if a statutory bond had been given to effect the same purpose. Smith v. Fargo, 57 Cal. 157; Gardner v. Donnelly, 86 Cal. 367, 24 Pac. 1072; Central v. Stewart, 133 Mass. 461; Slutter v. Kirkendall, 100 Pa. St. 307.

The case of Perry v. Post, 45 Conn. 354, cited by defendants' counsel, upon the statement of the case made in his brief, apparently supports his construction of the bond in question. But the bond in that case was given as a statutory bond, which stated the value of the property attached, as estimated, to be $7,000, and was for that amount. It was conditioned for the payment of the judgment that might be recovered in the suit, not exceeding the amount of the bond. The sole question involved in the case was whether, in assessing the damages for a breach of the bond, the value of the property at the time the bond was given or at the time the judgment was rendered was to control. It was conceded that the bond was a statutory one, and a substitute for the property attached. The case is not in point upon the question whether the bond we are considering is a statutory or a common-law bond. This is also true in reference to the case of Dunham v. Chisholm, set out in full in

the brief of counsel (U. S. C. C. Northern District of Illinois, January, 1898), which was an action upon this identical bond. In that case the obligors on the bond, by one of their pleas, set forth the bond as a statutory bond of Connecticut, and averred that the value of the attached property did not exceed $2,000. To this plea the plaintiffs demurred, which raised the question whether the measure of damages was the amount of the judgment or the value of the property attached, and it was held that the latter was the correct one. But the question whether the bond was a statutory or a common-law bond was not before the court, as the demurrer conceded that it was the former.

The question to which class this bond belongs is to be answered by a consideration of the statutory provisions, and what was done by the parties at the time the attachment was released. The only way provided by the statute of Connecticut for securing a dissolution of an attachment, by giving a bond, is by application to the judge of the court, giving to the plaintiff reasonable notice of the application, and an opportunity to be heard as to the value of the property and the sufficiency of the proposed bond, which must be in an amount equal to the value of the property attached, and conditioned to pay the judgment that may be recovered, or the value of the property attached, not exceeding the amount of the bond. The authority dissolving the attachment is required to certify his doings upon the application, and forthwith return it, with the bond and other proceedings, to the court to which the writ is returnable, where they must be kept on file. A compliance with these provisions of the statute involves delay and expense, but the plaintiffs waived them all, in consideration of the particular bond which was given.

The evidence shows that no application was made to the court, but that the whole matter was arranged by the attorneys of the respective parties. The attorneys met the next morning after the service of the process, and as a result of the meeting the bond was given and the attachment released. The whole matter was purely voluntary. The bond was delivered to Burr, and was retained by him until he delivered it to the obligors. The mere reading of the bond, in connection with the statute, shows that there was no

intention of complying with the statute, or to give a statutory bond. The plaintiffs in this case voluntarily consented to dissolve the attachment by which they sought to secure their debt upon receiving a bond to pay the debt in case they established it. Therefore the bond was given for a valid consideration, and not in consideration of the statutory provisions, and is not a statutory bond, but a common-law bond, enforceable according to its terms.

It follows, from this conclusion, that the trial court did not err in holding that the measure of the plaintiffs' damages for a conversion of the bond was the amount of the judgment recovered against Boyd, less the amount of reasonable attorney's fees for securing the judgment, or in refusing the evidence and requests tendered.

Order affirmed.