WILLIAM S. FAIRCHILD, DEFENDANT IN ERROR, v. LLEWELLYN REALTY COMPANY AND FREDERICK R. HASSELMAN, PLAINTIFF IN ERROR.

Submitted July 10, 1911—Decided March 4, 1912.

1. If a plaintiff sues two persons as contractors who on the face of things appeared as such, and at the trial proves that one defendant made the contract but fails to prove that the other defendant made it, it is a case of misjoinder of defendants. In order to constitute misjoinder it is not necessary that the evidence should affirmatively show that one of the defendants did not join in the contract.

2. Where the record shows that the plaintiff sued two persons as contractors, who on the face of things appeared as such, and tried to prove his case against both, but fails as to one, the presumption is that he was unable to prove his case against both, for it cannot be assumed that he has any more or better evidence than he produced.

3. In case of a joinder of too many defendants in an action on contract, and no notice is given by the defendants of such misjoinder, as allowed by section 37 of the Practice act (*Pamph. L.* 1903, *p.* 544), the plaintiff cannot be nonsuited for the reason of a misjoinder, but may recover against such of the defendants as the proofs warrant, and in such event, after the verdict, the proceedings may be amended so as to sustain the verdict. The case of *Fleming* v. *Freese,* 2 *Dutcher* 263, explained and distinguished. The case of *Patterson* v. *Loughridge,* 13 *Vroom* 21, explained, approved and followed. The case of *Elliott* v. *Bodine,* 30 *Id.* 567, followed.

4. When the defendant's agreement, for the non-performance of which the action was brought, was that, in consideration of a bond and mortgage delivered to him, he was to convey to the plaintiff certain land, the plaintiff is entitled, upon the breach thereof, to recover damages, the measure of which is the value of the land.

5. As between vendor and purchaser the estimated value of land as recited in the contract of sale is *prima facie* evidence of its value.

6. In the absence of evidence to the contrary, the presumption is that a bond, secured by a mortgage, is worth the sum expressed on its face.

On error to the Supreme Court.

For the plaintiff in error, *Charles E. S. Thorn.*

For the defendant in error, *Charles A. Woodruff* and *Ralph E. Lum.*

The opinion of the court was delivered by

TRENCHARD, J. This suit was brought by William S. Fairchild against the Llewellyn Realty Company and Frederick R. Hasselman to recover damages for the breach of an agreement in writing acknowledging receipt from Fairchild of a certain bond and mortgage, in consideration of which (as the instrument proceeds to declare) "we hereby agree to convey to Wm. S. Fairchild, or his nominee, three lots" of land, &c. It was signed by Frederick R. Hasselman, and purports to be signed

also "Llewellyn Realty Company, By R. J. Foard, Vice President."

At the trial, at the Essex Circuit, both defendants were represented by the same counsel. At the close of the plaintiff's testimony, he moved for a nonsuit as to the realty company upon the ground that there was a failure of proof as to the authority of Foard to act for the company, and as to the defendant Hasselman, upon the ground that the contract was joint. The nonsuit was granted as to the realty company, but denied as to the defendant Hasselman. Thereupon counsel rested his case without presenting any evidence, and a verdict was directed against Hasselman, who sues out this writ of error.

We are not concerned with the propriety of the nonsuit as to the realty company, because the plaintiff in error took no exception to it. Moreover, since his counsel moved the court to make the ruling, it must be taken as against Hasselman, as correctly ruled that the plaintiff failed to show that the company executed the agreement.

The assignments of error challenge the legal propriety of the refusal to nonsuit and the direction of a verdict.

The contention is that such rulings were erroneous because the contract was joint. We think the contention is without merit.

Conceding that the agreement on its face showed a joint contract, and that, if signed by both parties, it was a joint contract, the question remains, what should have been the result of the trial when the plaintiff proved that Hasselman individually made the contract, and failed to prove that the company made it.

We think it was proper for a verdict to go against Hasselman alone.

The argument to the contrary results in this, that the plaintiff having in good faith sued both parties who apparently executed the agreement, not only should not have had a verdict against one of them because of failure to prove the case as against the other, but can never at any trial in the future get any verdict at all unless he can convince one and the same jury that both parties executed the agreement; or, in the alterna-

tive, can convince a jury that Hasselman, for instance, executed the agreement, and show affirmatively that the company did not. We cannot assume that the plaintiff can produce any better evidence at a new trial than he produced at the first; and the result is that his effort to prove his case against both defendants defeats his right to a verdict against either, and he must turn about and undertake to prove an affirmative case in favor of one of the defendants. For, if we understand the argument leading to a reversal, it must go to the extent of saying that the plaintiff cannot be permitted to amend by striking out the company as a defendant, for if he could amend between now and a new trial, it seems to result *a fortiori* that he should be permitted to amend in order to sustain the present verdict.

We think the argument which leads to such result is fallacious.

Under the strict common law practice, the consequences where the plaintiff joined too many parties as defendants were so serious as to be almost penal. For such a misjoinder, or for the non-joinder as plaintiff of a party who ought to have been joined, the defendant, if the objection appeared upon the pleadings, could demur, move in arrest of judgment or bring a writ of error; or, if the objection did not appear upon the pleadings, the plaintiff could be nonsuited at the trial. The consequences of omitting a party who ought to have been joined as defendant were less serious, because this objection could only be taken by plea in abatement.

This practice of visiting a more serious penalty upon the plaintiff for omitting a co-plaintiff, or joining too many defendants, than was visited upon him for not joining sufficient defendants, would be almost inexplicable should we fail to recall that these rules originated when parties to a suit were excluded as witnesses because of interest. There was thus a motive for a plaintiff to omit one who ought to be joined as plaintiff, so that he could use him as a witness. And, on the other hand, there was a motive for joining too many defendants, in order to exclude them from being used by the proper defendants as witnesses. And, again, where the plaintiff sued

those parties, and those only, who, in fact, had made the joint agreement, but was unable to produce clear evidence to establish their responsibility, there was the temptation to move to strike one defendant out in order to use him as a witness, and thus in effect hold out an inducement to one defendant to give evidence against his fellows.

The common law rules upon misjoinder and non-joinder are set forth in 1 *Chit. Pl. (13th Am. from 7th London ed.)* *44 to 46, as follows: "In an action *ex contractu* against several, it must appear on the face of the pleadings that their contract was joint, and that fact must also be proved on the trial. If too many persons be made defendants, and the objection appear on the pleadings, either of the defendants may demur, move in arrest of judgment, or support a writ of error; and even if the objection do not appear upon the pleadings, the plaintiff may be nonsuited upon the trial, if he fail in proving a joint contract. Although in actions for torts one defendant may be found guilty and the other acquitted, yet in actions for the breach of a contract, whether it be framed in *assumpsit,* covenant, debt or case, a verdict or judgment cannot in general be given in a joint action against one defendant without the other. * * * As the consequences of the joinder of too many defendants in an action founded on a contract are in general so important, it is advisable in cases where it is doubtful how many parties are liable, to proceed only against those defendants who are certainly liable, in which case we shall see the non-joinder can only be taken advantage of by a plea in abatement."

"*Non-joinder.*—With respect to the mode of taking advantage of the omission of a party who ought to be made a codefendant, there is a material distinction between this case and that of co-plaintiffs. We have seen that if a person who ought to join as plaintiff be omitted, and the objection appear upon the pleadings, the defendant may demur, move in arrest of judgment, or bring a writ of error; or if the objection do not appear on the pleadings, the plaintiff, except in the case of co-executors or co-administrators, will be nonsuited. But in the case of defendants, if a party be omitted, whether liable to be

jointly sued upon personal contract, or as pernor of the profits of a real estate, as in debt for a rent charge, or as one of the assignees of a term, the objection can only be taken by plea in abatement. * * * If, however, it expressly appear on the face of the declaration, or some other pleading of the plaintiff, that the party omitted is still living, as well as that he jointly contracted, in that case the defendant may demur, or move in arrest of judgment, or sustain a writ of error."

This language, if attentively read, shows, we think, that in the terminology of this topic, if a plaintiff sued two persons as contractors who, upon the face of things, appeared as such, and at the trial proved that one defendant made the contract, but fails to prove that the other defendant made it, it was treated as a case of misjoinder of defendants. In order to bring it within the category of misjoinder, it was never deemed necessary that the evidence should affirmatively show that one of the defendants did not join in the contract. This matter of terminology is important when we come to consider the meaning of our statutes respecting misjoinder of parties.

The joinder of all the joint contractors as defendants was not essential to the right of one of the co-contractors to have contribution from his fellow; but it was important because where they were all joined the judgment against them all was conclusive evidence, in favor of the one against the others, of the right of contribution as well as of the amount of the common indebtedness. Where one of several joint contractors was omitted, it was necessary for the defendant who paid the judgment to sue him and show affirmatively his liability to contribution, and the amount.

But the present case is not embarrassed by any such consideration; for here the plaintiff did not omit to join those who appeared to be contractors; he simply failed to prove the case alleged as against one of them. And, as we think, the presumption upon this record is that he is unable to prove the case as against the realty company, for we cannot assume that he has any more or better evidence than he produced.

While, as already stated, the common law rule respecting misjoinder of parties was quite strict, and was based largely

upon the danger that a plaintiff, by omitting those who ought to be joined as plaintiffs, might improperly qualify witnesses in his favor, or by joining defendants who were really not parties to the contract, might improperly disqualify adverse witnesses, yet even these rules were apparently to some extent relaxed in practice, even prior to the modern statutes. Thus, in 2 *Esp. N. P.* 709, it is stated that "If a material witness for the plaintiff be made by mistake a defendant, the court will, on motion, give leave to omit him and strike his name out of the record, even after issue joined; for the plaintiff can in no case examine a defendant, even though nothing be proved against him. (Or the plaintiff may let a verdict pass for the defendant and then call him as witness.) * * * But if any person be arbitrarily made a defendant in order to prevent his testimony, it is said that if there is no evidence against him, he may be sworn and examined as a witness; but, *quære*, if there should not be a verdict taken for him, as it said before, that a defendant cannot be a witness on either side?"

Our legislature, by *Pamph. L.* 1849, *p.* 264, § 2, for the first time, enacted that in civil actions parties should be admitted to be sworn and give evidence when called as witnesses by the adverse party.

It was in 1859 that the disqualification of witnesses by reason of interest in the event, as a party or otherwise, was removed. *Pamph. L.* 1859, *p.* 489.

Meanwhile the reform Practice act of 1855 had been enacted (*Pamph. L., p.* 288), which provided, in section 9, that the non-joinder or misjoinder of a plaintiff should not be objected to by the defendant unless written notice were given within five days after filing the plea or demurrer, stating in the notice the name of the person alleged to have been omitted or improperly joined, and providing for an amendment before trial by striking out or adding plaintiffs. In section 10 it was enacted that the joinder of too many defendants should not be objected to on the trial unless the defendant within five days after filing his plea or demurrer should give written notice to the plaintiff of the intended objection; in which case the court or a judge at any time before trial might order the

name of one or more of the defendants struck out. Sections 11 and 12 perpetuated but modified the English practice pertaining to cases of the non-joinder of a defendant. Section 12, in a proviso, gave to a defendant who had pleaded in abatement to such non-joinder the privilege of proving on the trial the liability of the defendant named by him in the plea. Sections 43, 44, 45 and 46 contained liberal provisions respecting amendment of the pleadings, providing, among other cases, for the case of a variance between the allegation in a pleading and the proof at the trial.

It was under the Practice act of 1855 that the case of *Fleming* v. *Freese, 2 Dutcher* 263, was decided. That case is not, as has been suggested, authority for the proposition that the court would not permit a plaintiff to amend his proceedings by striking the name of one of the defendants out of the record. An all-important distinction between that case and the present case is that in Fleming *v.* Freese, it was *one of the defendants* who moved to strike the name of a co-defendant from the record in order to qualify him as a witness against the plaintiff. This makes all the difference, because the ground of the decision was that to permit this to be done on the trial when no notice of misjoinder had been previously given by the defendant as required by the Practice act, would, in effect, nullify section 10 of that act, which declares that the joinder of too many defendants shall not be objected to at the trial unless notice be given within five days after the plea. It should be observed that the summons was served upon Freese only, and returned by the sheriff not found as to the other defendant, Bellis. Freese alone appeared and pleaded to the action. No appearance was entered or plea filed for Bellis, nor was judgment by default entered against him. On the trial the plaintiff gave evidence tending to prove the liability of Freese, but "there was no satisfactory evidence to connect Bellis with the transaction or to warrant a recovery as against him. A motion was thereupon made in behalf of Freese to strike the name of Bellis from the record and to call him as a witness for his co-defendant, which motion was denied by the court." The Supreme Court sustained the propriety of this

ruling, but advised the Circuit Court to set aside the verdict, but upon another ground that seems not to have been certified to the Supreme Court, which was that as the action was based, so far as Bellis was concerned, upon the act respecting joint debtors, and as the statute authorized the proceeding after service of process upon one of several defendants only in the case of joint debtors, the failure to prove a joint contract rendered the entry of a judgment against Bellis unauthorized. Upon this topic the Chief Justice said: "The provisions of the tenth section of the act of 1855 can have no application to a cause except where the defendants are regularly before the court. It could not have been designed to cure radical defects in the institution of a suit, or to subject a party to a judgment who has not been brought into court, and against whom no cause of action is proved. In this view, it is immaterial whether the objection was urged by the defendant whose appearance had been effected, or by the absent defendant. The plaintiff should have been nonsuited upon the trial." So far as the report shows, the plaintiff (having obtained a verdict and judgment against two defendants upon proof that showed only one of them liable, and in a case where the other had not been served with process) had no opportunity to argue before the Supreme Court the question whether his judgment could not be permitted to stand as against Freese by amending the proceedings so as to strike out Bellis as a party defendant. The court did not decide, and we think did not intend to decide, that the forty-third and succeeding sections of the Practice act of 1855 did not permit an amendment to be made at the plaintiff's instance in such a case as was there presented. The plaintiff had asked for no amendment. It was the defendant's motion for an amendment of the plaintiff's proceedings that the court was discountenancing. Fleming *v.* Freese, therefore, is no authority at all upon the question now before us. But if it were, it must be deemed as overruled by *Patterson* v. *Loughridge,* 13 *Vroom* 21, which is entirely inconsistent with the *dicta* in Fleming *v.* Freese so far as they pertained to the topic now before us. In the Patterson case Chief Justice Beasley said: "The case of Fleming *v.* Freese

is in nowise in point, as it was a proceeding under the statute against joint debtors, a proceeding which, for very obvious reasons, cannot be subjected to the control of the statutory regulation above considered" (alluding to section 38 of the Practice act of 1874; *Rev.* 1877, *p.* 854; *Gen. Stat., p.* 2539, which is the same section 10 of the Practice act of 1855 that was referred to in Fleming *v.* Freese, and now section 37 of Practice act. *Pamph. L.* 1903, *p.* 544).

Patterson *v.* Loughridge has been often cited in subsequent decisions of the Supreme Court and of this court, and we do not recall that it has ever been disapproved or its reasoning criticised.

The syllabus states what was decided, viz., in case of a misjoinder of defendants, and no notice given by the defendants of such a misjoinder, the plaintiff is not entitled to a verdict against all the defendants unless such verdict be warranted by the proofs. In such a state of the proceedings, the plaintiff cannot be nonsuited if he proves a case against any of the defendants, but will have a verdict against only such as are proved to be liable. It should be pointed out that the report of this case, as found in 13 *Vroom* 22, is misleading as to the manner in which the question decided was presented. The briefs therein show plainly that Mr. Magie was for the plaintiffs and Mr. Parker for the defendants; that the plaintiffs had a verdict, but against Loughridge only, the jury having rendered a verdict in favor of the defendant Powers; that the plaintiffs moved for a new trial on the ground that they should have had a verdict against Powers as well as against Loughridge. Reading the briefs and the opinion together, it is quite clear that the statements in the report to the effect that Mr. Parker was for the plaintiffs and Mr. Magie for the defendants, and that it was the defendants who were applying for a new trial, are erroneous. The opinion shows that the testimony, being conflicting, and the indications arising from the circumstances proved being uncertain and obscure, the jury was instructed that if the evidence led them to such a conclusion they could find a verdict against one alone of the defendants. This proposition was attacked before the Supreme

Court by the plaintiffs on their rule to show cause, on the ground that, unless in a case of misjoinder of defendants the course marked out in section 38 of the Practice act were followed, the fact of a joint contract could not be disputed at the trial. The Chief Justice points out that at common law the misjoinder of defendants in an action *ex contractu,* when the point was made and developed at the trial, resulted in a non-suit, and that the statutory provision in question was remedial of that inequitable result. Referring to the provisions of the Practice act looking to an amendment of the proceedings before trial in case notice of misjoinder be given, he says: "In such event, in the nature of things, the amendment must be made prior to the trial, but such a provision cannot logically give rise to any implication against an amendment when the conditions of the procedure are changed. It does not follow that because, when a notice of misjoinder has been given, such amendments as are made must precede the time of trial, that when a notice is not given, amendments may not be made at, or subsequent to, the trial." And he goes on to declare that "if no notice of the misjoinder be given by the defendant, then the plaintiff cannot be nonsuited for the reason of a misjoinder, but may recover against such of the defendants as the proofs warrant, and in such event, after the verdict, the proceedings may be amended so as to accord with the facts as found."

We are of opinion that the present case is precisely within the rule thus declared. The contrary argument to the effect that there was no misjoinder in the present case of which Hasselman could give notice, because on the face of the declaration the contract appeared to be a joint contract made by him and the company is, we think, untenable. Where the objection appears on the face of the declaration, it could at common law be taken by demurrer, as pointed out in the above citation from Chitty's Pleadings. In cases not within the reach of a demurrer (and, of course, there were many such) it always appeared on the face of the declaration that there was a joint liability. In such a case the objection for misjoinder was at the common law raised by motion to nonsuit. But the statute

was manifestly intended to cover the case where it did not appear on the face of the declaration—that is to say, the case where the declaration showed a joint undertaking by all the defendants, but where the proof on the trial was otherwise. Such a case was Patterson *v.* Loughridge. In the subsequent case of *Bank of Toronto* v. *Manufacturers and Merchants Fire Association,* 34 *Vroom* 5, 14, the Supreme Court held that the provision of the Practice act referring to notice of misjoinder required such notice in case of a demurrer as well as of a plea, stating: "At common law the effect of misjoinder apparent on the face of the declaration would be to entitle all the defendants to judgment on demurrer. Under our statute the effect is that the plaintiff is entitled to judgment against the defendant who appears to be chargeable, but not against the defendant who appears to be not chargeable."

Of course, as Mr. Justice Dixon was there dealing with the effect of a written contract, whose language showed that one of the defendants was not chargeable, he employs the negative in that form. If he had been dealing with the effect of evidence upon a trial, he no doubt would have said: "The plaintiff is entitled to judgment against the defendant who appears to be chargeable, but not against the defendant who does not appear to be chargeable."

Nor do we think it is correct to say that this is a case of joint contract in fact, but failure to prove the fact. This begs the question. We do not know what was the contract in fact except from the proof that is disclosed by the bill of exceptions. But besides this, as we have pointed out, where a plaintiff declares on a joint contract, and shows by the proof that the one defendant signed it, without showing that the other defendant signed it, that makes a case of misjoinder of defendants within the terminology of the decisions.

Patterson *v.* Loughridge was approved and followed by this court in *Elliott* v. *Bodine,* 30 *Vroom* 567, 572, where it was said that the suit, being against both defendants, and no notice of misjoinder having been given, judgment against either defendant could be given as the proofs might warrant. There was no intimation that it was necessary for the plaintiff to

prove affirmatively that the undertaking was a several contract. Proof that the defendant undertook, without proof that the other defendant undertook, was proof warranting a judgment against the defendant who did undertake.

In the recent case of *Fleming* v. *Reed, Executor,* 48 *Vroom* 563, this court expressly held that if plaintiff declared against one of several joint contractors, and the defendant does not plead it in abatement and give notice of non-joinder, a contract alleged to have been made by a sole defendant may be supported by proof of a joint contract made by him and others. And in the opinion, Mr. Justice Bergen, after pointing out that the evidence indicated a promise made by the defendant for himself and others, said (at *p.* 566) : "But we do not find any evidence to support the contention that a joint contract was entered into; no promise or agreement was shown to have been made by anyone other than Moore, nor does it appear that he had any authority to bind the others." In short, we treated the non-production of evidence to show his authority for binding the others as sufficient to show upon the face of the bill of exceptions that the others were not bound.

The citations from 23 *Cyc.* 808, 809, are not against our view of the present case. The declaration on page 808 that "these statutes do not permit the rendition of a several judgment on a joint cause of action. That can be done only where a several judgment would be proper. That is to say, if plaintiff sues on a joint contract or obligation which is not also several, he must recover against all or none as at common law, the test being whether a separate action against the particular defendant could have been maintained," refers to an action under a joint liability act, as the context shows. But on the next page it is stated : "Although it is a general rule, as above stated, that plaintiff must recover against all the defendants or none, yet it is held permissible for him to enter a dismissal, discontinuance or *nolle prosequi* against one or more of the defendants, and proceed to trial and judgment against the rest; and this course is proper where its object is to cure a misjoinder, or where there is failure of jurisdiction over one of the de-

fendants because of his non-residence, or because of a failure to secure service of process upon him," &c.

We, therefore, hold that in case of a joinder of too many defendants in an action on a contract, and no notice is given by the defendants of such misjoinder as allowed by section 37 of the Practice act (*Pamph. L.* 1903, *p.* 544), the plaintiff cannot be nonsuited for the reason of a misjoinder, but may recover against such of the defendants as the proofs warrant, and in such event, after the verdict, the proceedings may be amended to sustain the verdict.

Lastly, it is contended that the direction of the verdict was erroneous because the jury should have been permitted to assess the damages.

It may well be that this question is not properly raised by any exception or assignment of error. But, if presented, it is without merit.

The defendant's agreement, for the non-performance of which the action was brought, was that, in consideration of a bond and mortgage for $1,500 delivered to him, he was to convey to the plaintiff certain land. It is obvious that for this breach the plaintiff was entitled to recover damages, the measure of which was the value of the land. *Rutan* v. *Hopper,* 5 *Dutcher* 112; *Hinchman* v. *Rutan,* 2 *Vroom* 496.

As between vendor and purchaser the estimated value of land as recited in the contract of sale is *prima facie* evidence of its value. *Humphreys* v. *Shellenberger,* 89 *Minn.* 327; *Conklin* v. *Hancock,* 67 *Ohio St.* 455.

In the absence of evidence to the contrary, the presumption is that a bond, secured by a mortgage, is worth the sum expressed on its face. *Booth* v. *Powers,* 56 *N. Y.* 22; *Johnson* v. *Dun,* 75 *Minn.* 533; *Metropolitan Electric Railway Co.* v. *Kneeland,* 120 *N. Y.* 134.

There being no evidence to the contrary, and no other evidence as to the value of the land, the verdict was properly directed for the amount of the bond.

The proceedings will be amended so as to sustain the verdict in accordance with the views herein expressed, and the judgment of the court below will be affirmed.

*For affirmance*—THE CHANCELLOR, GARRISON, TRENCHARD, PARKER, BERGEN, VOORHEES, KALISCH, BOGERT, VREDEN-BURGH, CONGDON, WHITE, JJ. 11.

*For reversal*—THE CHIEF JUSTICE, SWAYZE, J. 2.