# EDWIN HOMMERBERG v. STATE BANK OF SLAYTON.[1]

January 21, 1927.

No. 25,571.

**When bank check is presumed to be deposited for collection.**

1. A check, drawn upon one bank, deposited by the payee in another bank, is presumed to be for collection.

**What collecting agent may receive in payment of principal's debt.**

2. A collecting agent is without authority to accept in payment for his principal's debt anything but that which the law declares to be legal tender or which is, by common consent, treated as money.

**When collecting bank is liable for accepting a draft in payment of check.**

3. A collecting bank is liable to the payee named in a check where it accepts a draft in payment of such check.

**Statute does not authorize collecting bank to accept draft in payment.**

4. Section 7233, G. S. 1923, which permits a bank to send a check, which it holds for collection, directly to the drawee bank without becoming liable for loss occasioned by the insolvency of the latter, does not include authority for the collecting bank to accept a draft in payment of such check.

**Parties bound by result when they try issues not within the pleadings.**

5. Where the parties have by consent tried issues not made by the pleadings, they are bound by the result the same as if the issues were within the pleadings.

Agency, 2 C. J. p. 628 n. 26; p. 727 n. 66.
Appeal and Error, 4 C. J. p. 720 n. 49.
Banks and Banking, 7 C. J. p. 614 n. 52; p. 669 n. 23 New.

Defendant appealed from an order of the district court for Pipestone county, Nelson, J., denying its motion for a new trial. Affirmed.

*C. T. & C. B. Howard* and *Whitney & Whitney*, for appellant.
*Hall & Gislason*, for respondent.

[1]Reported in 212 N. W. 16.

QUINN, J.

Plaintiff is a farmer, residing 18 miles out from Slayton, in Murray county. Defendant is a banking corporation, organized under the laws of this state and engaged in the general banking business at Slayton. On July 17, 1924, plaintiff sold to Paul W. Giese a bunch of cattle, taking his check for $558.10 therefor, drawn on the First State Bank of Balaton, payable to himself, and on that day sent the same by mail to the defendant bank in which he had an account subject to check. The bank received the check, placed the amount thereof to the credit of plaintiff and, on the following day, July 18, sent the check to the First National Bank of Pipestone and that bank transmitted it to the First National Bank of Minneapolis which bank sent the same, together with other checks, to the First State Bank of Balaton for payment. On July 20 that bank received the check, charged the amount thereof to Giese's account, stamped the check "paid," and returned it to the maker. On July 23 the Balaton bank issued and transmitted to the Minneapolis bank a draft on the First National Bank of St. Paul to cover the amount of the check which was received and presented for payment by the Minneapolis bank on July 24, and payment was refused. At the close of business on that day, the Balaton bank closed its doors on account of its insolvent condition and has ever since been in the hands of a receiver. On the following day the Minneapolis bank notified the defendant bank of its failure to collect on the draft and of the closing of the Balaton bank. On July 29 the defendant bank charged the amount of the check to plaintiff's checking account and has since refused and neglected to in any manner account to plaintiff therefor. The First State Bank of Balaton was the only bank in that village.

The trial court made findings to the effect that plaintiff never made or had any contract with the defendant bank as to the handling of the check other than above indicated; that he never authorized defendant to employ assistants in collecting the same, or to receive any draft in payment therefor and knew nothing of the custom of banks in that vicinity in handling such matters; and that defendant

and its agents were negligent in handling the check. As conclusions of law, the court found that plaintiff was entitled to judgment against the defendant for the amount of the check with interest and costs. From an order denying its alternative motion for amended findings or for a new trial, defendant appealed.

It is claimed on behalf of appellant that the Minneapolis bank was justified in sending the check direct to the Balaton bank under the provisions of G. S. 1923, § 7233, without becoming liable for loss on account of the insolvency of such bank. However this may be it will be observed from a reading of the statute that it is not authority for the receiving or accepting of a draft in lieu of money for paper sent for collection or payment under such circumstances, and if the collecting bank does so it assumes the risk that the draft will be paid and becomes liable to the owner for the amount of the check.

The rule applicable is well stated by the federal Supreme Court in Fed. Res. Bank v. Malloy, 264 U. S. 160, 44 Sup. Ct. 296, 68 L. ed. 617, 31 A. L. R. 1261, as follows:

"It is a settled law that a collecting agent is without authority to accept for the debt of his principal anything but 'that which the law declares to be a legal tender, or which is by common consent considered and treated as money, and passes as such at par.' * * * The rule applies to a bank receiving commercial paper for collection, and if such bank accepts the check of the party bound to make payment and surrenders the paper, it is responsible to the owner for any resulting loss."

The above rule was adopted in Exchange Nat. Bank v. Third Nat. Bank, 112 U. S. 276, 5 Sup. Ct. 141, 28 L. ed. 722, and has been followed by the courts of last resort of several of the states, including this state. Semingson v. Stock Yards Nat. Bank, 162 Minn. 424, 203 N. W. 412; Allen v. Merchants Bank, 22 Wend. 215, 34 Am. Dec. 289; Ayrault v. Pacific Bank, 47 N. Y. 570, 7 Am. Rep. 489; Simpson v. Waldby, 63 Mich. 439, 30 N. W. 199; Titus & Scudder v. Mechanics Nat. Bank, 35 N. J. L. 588; Reeves, Stephens & Co. v. State Bank, 8 Ohio St. 465; Jensen v. Laurel Meat Co. 71 Mont. 582, 230 Pac. 1081. In the case last cited, the court says:

"It is the general rule that a bank accepting a check for collection is authorized to receive money only and has no implied authority to receive a draft instead, and, if it does so, it assumes the risk that the draft will be paid and become liable to the owner for the amount of the check."

Bank of Antigo v. Union Tr. Co. 149 Ill. 343, 36 N. E. 1029, 23 L. R. A. 611; Fifth Nat. Bank v. Ashworth, 123 Pa. St. 212, 16 Atl. 596, 2 L. R. A. 491.

Under the rule in the Malloy case, which is the rule in this and many other states, when a bank receives a check from its customer for collection, in the absence of an agreement to the contrary, it enters into a contract by implication to perform all such duties as are necessary for the protection of such customer, and, having undertaken the collection of such paper, stands in the attitude of an independent contractor who, having designated a sub-agent, is answerable to its customer for the neglect, failure or default of such agent. Under this rule the defendant bank is an independent contractor. It contracted to collect the paper itself and is responsible for the default of its agents in the same manner as though the acts of the agent had been performed by itself and under such rule it is not incumbent on plaintiff to show that defendant was negligent in selecting its agent. Streissguth v. Nat. G. A. Bank, 43 Minn. 50, 44 N. W. 797, 7 L. R. A. 363, 19 Am. St. 213; Fort Dearborn Nat. Bank of Chicago v. Security Bank of Renville, 87 Minn. 81, 91 N. W. 257; Pope v. Ramsey County State Bank, 137 Minn. 46-49, 162 N. W. 1051; Johnson v. Dun, 75 Minn. 533-538, 78 N. W. 98; Ex. Nat. Bank v. Third Nat. Bank, supra; Naser v. First Nat. Bank, 116 N. Y. 492, 22 N. E. 1077; Fed. Res. Bank v. Malloy, supra.

We find no merit in the claim that the evidence is at variance with the allegations of the complaint. The cause was tried on a stipulation of facts and a small amount of testimony offered by plaintiff and received without objection. The cause was submitted by counsel and determined by the court upon the proofs so produced and the variances, if any there are, having been disregarded by the parties upon the trial, are quite immaterial. Rogers v. H. & D. Ry. Co. 22 Minn.

25; Erickson v. Fisher, 51 Minn. 300, 53 N. W. 638; Bassett v. Haren, 61 Minn. 346, 63 N. W. 713; Madson v. Madson, 80 Minn. 501, 83 N. W. 396; Bradley v. Bradley Estate Co. 97 Minn. 130, 106 N. W. 338.

The check given to plaintiff by Giese was payable in money and in nothing else. Giese, having funds to his credit in the Balaton bank sufficient to meet the check, had a right to assume that the payee would, upon presentation of the check, exact in payment precisely what the check was given for and that he would not accept in lieu thereof something for which it had not been drawn. The acceptance by the collecting agent of anything else rendered it liable to the owner as though it had collected the cash. The reasons for the rule are set forth in full in the opinion in the Malloy case, supra.

The order appealed from should stand.

Affirmed.

WILSON, C. J. (concurring).

I concur in the result. We did not in the Semingson case adopt the rule in the Malloy case, although we do so now. We apparently adopted the theory or principle in Streissguth v. Nat. G. A. Bank, 43 Minn. 50, 44 N. W. 797, 7 L. R. A. 363, 19 Am. St. 213. This is a logical but harsh rule. The rule of law is now well settled but it is so impracticable that its enforcement is extremely perilous to the banking interest. It will require every bank in the state to enter into contractual relation with all customers and correspondents for whom it handles collection items authorizing it to accept drafts as payment.

The Slayton bank is responsible to plaintiff for anything done or omitted by the Pipestone, the Minneapolis and the Balaton banks in collecting the check.

The Balaton bank acted in a dual capacity. It had no authority to accept its own draft on the St. Paul bank in payment of the check. It is liable to plaintiff for the loss he suffered in consequence of its act outside the scope of its authority, and its liability attaches to the Slayton bank as the initial collecting agent.

The basis of liability is not negligence, but the unauthorized act of the Balaton bank which was the direct cause of plaintiff's loss. 2 C. J. 727; 1 Paton's Digest, § 1571. See City of Douglas v. Fed. Res. Bank of Dallas, 271 U. S. 489, 46 Sup. Ct. 554, 70 L. ed. 1051.

STONE, J. (concurring).

I concur in the result but only in deference to the opinion of the Supreme Court of the United States as expressed in the Malloy case. The major premise of that opinion, that a check, draft or note is payable only in money, is true technically but untrue practically. It is true only to the extent that the holder may demand money if he chooses and is entitled to it if he demands it. Under modern banking practice, it seems to me that the proposition has become untrue in every case where the instrument is deposited for the credit of the holder with a bank other than the one upon which the instrument is drawn or where it is made payable. In such cases the holders not only do not demand but normally do not expect or even want payment in money. What they do want and expect in every such case (unless the contrary appears by some special circumstance) is not payment in money but a transfer to the account of the depositor, through banking channels, of an amount of credit equivalent to the money called for by the check, draft or note. The number of transactions where that is not the case is less than negligible.

So it seems to me that we are submitting this case to decision upon an archaic rule, one utterly out of harmony with modern banking practice. If banks everywhere should put in practice the premise that only currency or coin could be taken in payment of individual checks and drafts, the fiscal system of the country would break down at once under the excessive demand for money. Not only does the premise of the right to payment in money, unqualified by banking practice and commercial custom, seem obsolete but it also seems out of harmony with our statute. G. S. 1923, § 7233. But as the similar rule of the federal reserve banks was before the supreme court in the Malloy case, our error, if any, in following that case is on the side of conservatism, and one that can easily be corrected by the legislature if it desires that the law should be otherwise than we are now finding it to be.