## W. R. PARVIN v. MIDLAND NATIONAL BANK & TRUST COMPANY OF MINNEAPOLIS.[1]

March 8, 1929.

No. 27,137.

*Allen & Fletcher* and *Thomas Vennum,* for appellant.
*Devaney & Edwards* and *R. V. Gleason,* for respondent.

TAYLOR, C.

Action on a draft issued by defendant; verdict for defendant; and judgment entered for plaintiff notwithstanding the verdict. Defendant appealed.

The draft was issued to the Parvin-Scharer Company of Kansas City, Missouri, and was transferred by that company to plaintiff, its

[1]Reported in 224 N. W. 147.

president and principal stockholder. For brevity we shall use the term plaintiff whether referring to plaintiff or his company, as plaintiff conducted the transaction on behalf of the company and now stands in the shoes of the company.

Plaintiff shipped a carload of Mexican circle tomatoes to the Morris Fruit & Produce Company of Minneapolis, which arrived at Minneapolis over the Rock Island railroad on April 15, 1926. The representative of the Morris company, accompanied by plaintiff's broker who had made the sale, inspected the tomatoes in the car on the railroad track and refused to receive them on the ground that they were damaged to such an extent that they were not marketable. Another company had shipped a carload of the same kind of tomatoes and containing the same quantity to the Morris company which arrived at Minneapolis over the same railroad at about the same time as plaintiff's carload. The Morris company inspected these tomatoes and accepted them. Plaintiff mailed to defendant a draft on the Morris company payable to defendant for the price of plaintiff's tomatoes, inclosed therewith an order directing the railroad company to deliver the tomatoes to the Morris company, and requested defendant to collect the draft, deliver the order and remit the proceeds of the draft. Defendant delivered the draft and the order to the Morris company and received the check of that company upon another bank for the amount of the draft. That same afternoon defendant mailed to plaintiff at Kansas City its own draft upon a Chicago bank for the amount of plaintiff's draft. The next morning the Morris company returned plaintiff's draft and order to defendant and notified defendant that it had stopped payment of the check given to defendant for the reason that plaintiff's tomatoes had been rejected as unmarketable and that the check had been given in the mistaken belief that it was for the other carload of tomatoes. Defendant immediately wired plaintiff that payment of the Morris check had been stopped because issued under a mistake, to return defendant's draft, and that defendant had stopped payment of the draft. Defendant's draft was then in the mails. When it arrived plaintiff deposited it in a Kansas City bank, which sent

it to Chicago where payment was refused and the draft protested. The suit is upon this draft.

Plaintiff contends that defendant as its collecting agent was without authority to accept anything except money in payment of plaintiff's draft and that in accepting the check of the Morris company defendant became liable to plaintiff the same as if it had collected the money, citing Hommerberg v. State Bank of Slayton, 170 Minn. 15, 212 N. W. 16; and Federal Res. Bank v. Malloy, 264 U. S. 160, 44 S. Ct. 296, 68 L. ed. 617, 31 A. L. R. 1261. This may be conceded. Plaintiff further contends in substance that the action of defendant in mailing to plaintiff its own draft on a Chicago bank constituted a payment to defendant of the amount collected. We are unable to assent to this proposition. If the Chicago bank had become insolvent before presentation of the draft plaintiff would hardly claim that the loss should be borne by plaintiff and not by defendant. In 30 Cyc. 1194, it is said:

"In the absence of an agreement between the parties that it is to be received as payment, the common law rule which prevails in England and has been adopted without question in nearly all of the states in this country is that a draft or bill of exchange, acceptance, order, or promissory note of the debtor is not a payment or an extinguishment of the original demand." Numerous cases are cited.

This rule has been adopted and uniformly followed in this state. Johnson v. First State Bank, 144 Minn. 363, 175 N. W. 612, 9 A. L. R. 960; First Nat. Bank v. McConnell, 103 Minn. 340, 114 N. W. 1129, 14 L.R.A.(N.S.) 616, 123 A. S. R. 336, 14 Ann. Cas. 396; McFadden v. Follrath, 114 Minn. 85, 130 N. W. 542, 37 L.R.A.(N.S.) 201. Other cases applying the same principle are cited in 5 Dunnell, Minn. Dig. (2 ed.) §§ 7444, 7445, 7446. Where a debtor gives his own check or draft to a creditor, it does not operate as a payment of the debt until the check or draft is paid, unless an agreement to the contrary be shown. As we view this case, the mailing of the draft to plaintiff did not have the effect of payment to plaintiff, and defendant having stopped payment of the draft is to be considered as standing in the position of an agent who has received money for

his principal which he refuses to turn over to him. Where money is paid to an agent for his principal by mistake and the payer notifies the agent of the mistake and claims the money while it remains in the hands of the agent, the agent becomes liable therefor to the payer and cannot thereafter be required to pay it to his principal. 2 C. J. 821, and cases cited in note 46; Shepard v. Sherin, 43 Minn. 382, 45 N. W. 718; Kremer v. Lewis, 137 Minn. 368, 163 N. W. 732, par. 5 of opinion, and cases cited.

The case was submitted to the jury fairly. The jury by their verdict necessarily found that the Morris company had rejected plaintiff's tomatoes; that it was justified in rejecting them; and that it gave its check to defendant in the mistaken belief that it was paying for a carload which had been accepted. The verdict is sustained by ample evidence.

These facts together with other admitted facts show that plaintiff is not entitled to recover, because not entitled to the money represented by the draft. It follows that the judgment must be and is reversed.

HOLT, J. took no part.